**GEORGE A. FULLER CO., A DIVISION OF NORTHROP CORPORATION, Plaintiff-Appellant,**

v.

**CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE, a corporation, et al., Defendants-Appellees.**

**No. 80–1554.\***

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1983.

Decided Oct. 14, 1983.

Rehearings Denied Jan. 13, 1984.

---

\* The appeal is Case No. 80–1554 was consolidated with the appeals in Case Nos. 82–2176, 82–2177, 82–2259, 82–2315, and 82–2316. Oral argument was heard the same day by the same panel in the consolidated appeals, but argument in Case No. 80–1554 was heard separately from the argument in Case Nos. 82–2176, 82–2177, 82–2259, 82–2315, and 82–2316. For purposes of simplification, separate opinions are being issued the same day for Case No. 80–1554, and for Case Nos. 82–2176, 82–2177, 82–2259, 82–2315, and 82–2316.

See also Seventh Circuit, 719 F.2d 1335.

Robert E. Kehoe, Chicago, Ill., for plaintiff-appellant.

Steven A. Gorman, Foran, Wiss & Schultz, John R. Doyle, McDermott, Will & Emery, Chicago, Ill., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and GIBSON, Senior Circuit Judge.**

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff-appellant, George A. Fuller Company, a division of Northrop Corporation ("Fuller"), brought this action for tortious interference with contract against defendants-appellees, the Chicago College of Osteopathic Medicine ("CCOM"); CCOM's president, Thaddeus P. Kawalek; CCOM's vice-president, Robert W. Schaerer; and the architectural firm of Schmidt, Garden

** The Honorable Floyd R. Gibson, Senior Circuit Judge of the Eighth Circuit, is sitting by desig-

and Erikson ("SGE"). Jurisdiction is based on diversity of citizenship. The parties agree that the law of Illinois is controlling.

## I. *Facts.*

This action involves both a construction contract between CCOM and Fuller whereby Fuller agreed to build a New Family Outpatient Clinic (the "project"), and the subcontracts between Fuller and numerous, unidentified subcontractors. SGE was the project architect. Due to disputes between the parties during the construction, CCOM and SGE terminated Fuller prior to completion.

Thereafter, CCOM filed suit against Fuller in the Northern District of Illinois under the caption *Chicago College of Osteopathic Medicine v. George A. Fuller Company,* ("Case No. 75 C 4161"), alleging that Fuller breached the construction contract by failing to carry the work forward in an expeditious manner, improperly supervising work on the project and submitting improper payment applications. Fuller denied the charges and counterclaimed against CCOM and SGE, alleging that they had breached the construction contract by delaying the project's progress, delaying or refusing to make certain payments allegedly due Fuller, and terminating Fuller.

In early 1979, Fuller sought leave to file an amended counterclaim in Case No. 75 C 4161. Count III of the proposed amended counterclaim was virtually identical to the complaint involved in this action. On July 11, 1979, prior to a ruling on its motion, Fuller filed the instant complaint under Docket No. 79 C 2890. Thereafter, Fuller was denied leave to file Count III of its amended counterclaim in Case No. 75 C 4161. Fuller did not appeal that ruling, but did seek leave to have Case No. 79 C 2890 consolidated with Case No. 75 C 4161. In its motion to consolidate, and at a later hearing, Fuller contended that its tortious interference theory set forth in the 1979 complaint was "based upon the same set of

nation.

facts and transactions" and involved "essentially the same issues and evidence" as the contract theory asserted in its counterclaim in Case No. 75 C 4161. The defendants moved to dismiss the complaint in Case No. 79 C 2890.

On March 19, 1980, Judge Leighton granted the defendants' motions and dismissed Fuller's complaint, concluding the complaint was vague and failed to state a claim upon which relief could be granted. The dismissal was without prejudice to Fuller amending its counterclaim in Case No. 75 C 4161 and asserting, in proper fashion, any claims which it had against the plaintiff (CCOM) in that action. Fuller appeals from that dismissal having elected to stand on its complaint and not to file any claims in addition to those already filed in Case No. 75 C 4161.

CCOM's breach of contract claim against Fuller, and Fuller's contract claim against CCOM and its claims against SGE in Case No. 75 C 4161 were tried by a jury in November and December, 1980. Verdicts were returned in favor of CCOM and SGE and against Fuller on Fuller's respective claims against them, and against CCOM on its claim against Fuller. Judgments entered on the verdicts are now on appeal to this court.

Although this appeal raises several issues, we need only consider whether the complaint states an action for tortious interference of contract, due to our conclusion that it does not.

## II. *The Complaint.*

For purposes of analysis, the complaint is summarized in detail as follows:

In 1973, Fuller and CCOM contracted for Fuller to construct a New Family Health Care Outpatients Clinic. SGE was architect and supervisor for the project. Fuller then contracted with numerous subcontractors with the knowledge of CCOM, SGE, Kawalek, and Schaerer ("defendants"). Complaint ¶ 9. Between 1971 and 1973, CCOM applied to the United States Department of Health, Education and Welfare for federal grants to finance the construction and received approval for 75% of the con-

struction price. *Id.* ¶ 13. In 1974, CCOM sought financing through a bond issuance in the amount of $35,000,000 to provide money for the clinic and, predominantly, for the construction of a teaching hospital—a costlier project for which SGE also served as architect. *Id.* ¶ 15. Motivated in part, "to consummate the . . . bond financing and proceed with the construction of the new . . . hospital," the defendants caused the publication of false statements concerning the cost increases of the clinic project, fearing that disclosure of increases would jeopardize the funding.

Prior to June 10, 1975, the defendants conspired to: (1) avoid costly borrowing by refusing to "approve or pay Fuller's payment applications for work performed by Fuller and its subcontractors during the months of March, April and May, 1975," thereby forcing Fuller and the subcontractors to finance the cost of construction; (2) refused to "approve or pay delay claims of Fuller and its subcontractors," despite their responsibility for the delay; (3) refuse to "approve or pay the claims for extras of Fuller and its subcontractors, although the work had been authorized for agreed amounts in writing by SGE. . . ." *Id.* ¶ 21(a)–(c).

After June 10, 1975, despite the success of the bond issue, the defendants—still interested in concealing the "true facts,"—"interfered with Fuller's relations with CCOM under that contract and with Fuller's contractual relations with its subcontractors" by the following acts: (1) In late June, 1975, when paying for work performed in March, April, and May, 1975, the defendants "arbitrarily and maliciously reduced the amounts shown" on the payment application and refused to pay the full amount; (2) To coerce Fuller to waive claims for extras and delays, they refused to approve or pay certain other payment applications "on the unfounded grounds that Fuller's payment applications were not in proper form," and subcontractors had filed mechanic's liens against the property; (3) Defendants refused to pay Fuller for such work even after the mechanic's liens

were released or bonded over; (4) They "pretended" to negotiate with Fuller and the subcontractors concerning their claims; (5) They met with certain of Fuller's subcontractors, and encouraged them to stay with the project even though Fuller would be replaced; and (6) They planned to and ultimately did terminate and file a lawsuit against Fuller. *Id.* ¶ 24(a)–(h).

After the project and the hospital were completed, CCOM "publicly charged that SGE" breached its obligation under the construction contract for the project. The defendants carried out their conspiracy "without justification, maliciously and with the intention and the effect of rendering Fuller unable to perform its obligations under the construction contract and subcontracts, and of depriving Fuller of the benefits to which it was justly entitled under those contracts." *Id.* ¶ 29. Finally, Fuller claims that he was damaged as a result.

### III. *Failure to State a Claim.*

■ Fuller takes the position that the complaint embodies separate claims against each defendant for tortiously interfering with the contractual relations between Fuller and the subcontractors, and with the contractual relations between Fuller and CCOM. Under Illinois law, the essential elements of a cause of action for tortious interference with contract are: "[1] a valid contract, [2] defendant's knowledge of the existence of the contract, [3] defendant's intentional and malicious inducement of the breach of the contract, [4] breach of contract caused by defendant's wrongful conduct, and [5] resultant damage to the plaintiff." *Swager v. Couri,* 60 Ill.App.3d 192, 196, 17 Ill.Dec. 457, 500, 376 N.E.2d 456, 459 (1978), *aff'd,* 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979). We shall first consider whether the complaint states a cause of action for tortious interference with contract against the defendants as to Fuller's contractual relation with the subcontractors, and then as to Fuller's contractual relation with CCOM.

### A. *Subcontracts.*

The complaint does not allege that the defendants—CCOM, Kawalek, Schaerer and SGE—induced the subcontractors to breach their contracts with Fuller. The parties dispute, however, whether Illinois law requires more than adverse impact (i.e. breach, termination, increased burden or hindrance of contract) to satisfy the breach of contract element of the tort, and whether the inducing conduct must be directed at the subcontractors, rather than either the subcontractors *or the plaintiff.*

■ Our review of Illinois case law reveals no ruling that a cause of action for tortious interference with contract can be stated on the basis of "adverse impact" or "hindrance of contract."[1] With respect to

---

1. Fuller's reliance upon *O'Brien v. State Street Bank & Trust Co.,* 82 Ill.App.3d 83, 37 Ill.Dec. 263, 401 N.E.2d 1356 (1980), *City of Rock Falls v. Chicago Title & Trust Co.,* 13 Ill.App.3d 359, 300 N.E.2d 331 (1973), and *Hannigan v. Sears, Roebuck and Co.,* 410 F.2d 285 (7th Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 17 (1969), as support for its position is misplaced.

In *O'Brien,* the Illinois Appellate Court in discussing the *prima facie* elements to establish interference with business relationship or prospective business advantage, stated that "intentional interference inducing or causing a breach or termination of the relationship or expectancy" was an essential element of those torts. *O'Brien,* 82 Ill.App.3d at 85, 37 Ill.Dec. at 265, 401 N.E.2d at 1358. The plaintiff there alleged that the defendants had "destroyed [plaintiff's] expectancies, good will, [and] existing business relationships." Thus, more than a mere hin-

drance was involved in *O'Brien;* the relationships had terminated.

The claim in *City of Rock Falls* was predicated on interference with a prospective business advantage, rather than interference with contract. Thus, allegations of an existing contract and breach thereof were not essential.

*Hannigan* is limited to instances where the interference results in the equivalent of a breach, achieving the same outcome as a breach through coercing a contractual modification. Absent persuasive indicia that the Illinois Supreme Court would extend the action for intentional interference with contract to cover instances of mere hindrance or increased burden, we will not do so.

Fuller also relies upon *American Fletcher Mortgage Co. v. U.S. Steel Credit Corp.,* 635 F.2d 1247 (7th Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1982, 68 L.Ed.2d 300 (1981), and Restatement (Second) of Torts § 766A (1979).

the breach element of tortious interference with contract, both the Illinois Supreme Court[2] and the Illinois Appellate Court[3] consistently require more than conduct rendering performance of the contract more burdensome, writing in terms of requiring either a breach of contract, termination of the contractual relations, or rendering performance impossible. We conclude that Fuller's complaint fails to state a cause of action for intentional interference with the subcontracts because no resulting breach is alleged.

■ Even if Fuller had alleged a breach of the subcontracts, the complaint would still be deficient. Under Illinois law, liability for tortious interference may only be premised on acts immediately directed at a third party which cause that party to breach its contract with the plaintiff. This rule is succinctly set forth in *Mitchell v. Weiger,* 87 Ill.App.3d 302, 42 Ill.Dec. 543, 409 N.E.2d 38 (1st Dist.1980). There the court dismissed a complaint because the alleged acts of interference had been directed towards the plaintiff rather than a third party:

> [I]nducement to breach contract involves acts aimed at parties other than a plaintiff. Those acts, in turn, cause those parties to breach a contract held by that plaintiff.

*Herman,* 41 Ill.2d 468, 244 N.E.2d 809, 814 (1969) (emphasis added).

---

2. *See, e.g., Herman v. Prudence Mutual Casualty Co.,* 41 Ill.2d 486, 244 N.E.2d 809 (1969); *Meadowmoor Dairies Inc. v. Milk Wagon Drivers' Union of Chicago,* 371 Ill. 377, 21 N.E.2d 308 (1939), *aff'd,* 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941) ("inducing such contracts to be *broken,* or by doing things which make them *impossible* of performance") (emphasis added); *Loewenthal Securities Co. v. White Paving Co.,* 351 Ill. 285, 184 N.E. 310, 315 (1932) ("To support such a cause of action it is necessary to establish that an outsider has 'maliciously' and 'without lawful cause or justification' induced a breach of contract or an interference with or termination of a recognized contractual relation.").

To the extent that *American Fletcher Mortgage Co.* stands for the proposition that a claim for intentional interference with contract can be stated even absent a breach of contract, it is an interpretation of *Indiana law, not Illinois law.* For the same reason, Fuller's reliance on section 766(A) of the Restatement (Second) of Torts is misplaced. Fuller cites no Illinois case relying upon section 766(A), and independent research has located none.

In *Herman,* the circuit court dismissed the complaint for failure to state a cause of action for malicious interference with contractual rights. The complaint alleged that the plaintiffs (several attorneys) had entered into employment retainer contracts with ninety-two clients who had personal injury or property damage claims against insureds of Prudence Mutual Casualty Company. Employees of Prudence attempted to settle directly with the plaintiffs' clients. Agreeing with the circuit court, the Illinois Supreme Court held "in the absence of factual allegations that the employment contracts were *breached or terminated* with resulting damage to plaintiffs, the complaint fails to state a cause of action for damages for malicious interference with contract."

3. *See, e.g., Exchange National Bank v. Farm Bureau Life Ins. Co.,* 108 Ill.App.3d 212, 63 Ill.Dec. 884, 438 N.E.2d 1247 (3d Dist.1982) (No cause of action because defendants had not "induced a *breach* of that contract or purposely caused [the third party] *not to perform* its contract.") (emphasis added); *Pfendler v. Anshe Emet Day School,* 81 Ill.App.3d 818, 37 Ill.Dec. 1, 5, 401 N.E.2d 1094, 1098 (1st Dist.1980). *See also National Educational Advertising Services, Inc. v. Cass Student Advertising, Inc.,* 454 F.Supp. 71, 73 (N.D.Ill.1977) ("There having been no subsequent breach, a necessary element of the tort is lacking. Although plaintiff asserts that any conduct rendering the performance of a contract more burdensome is actionable, *Illinois* law apparently is otherwise and requires a breach before a party may sue on the conduct, even though there may be damage sustained.") (original emphasis).

In *Pfendler,* a teacher sued the private school she had worked for claiming breach of contract, and its director for wrongful inducement of breach of contract. The court ruled that the *school had not breached its contract with the* teacher because she was discharged in accordance with the applicable rules. As for the teacher's claim that the director had made false charges of incompetency against her causing the school to unjustifiably terminate her employment, the appellate court stated:

> [T]he rights of plaintiff and defendant Nathan are governed by the result above reached that there has been no breach of the contract between plaintiff and the defendant school.... Since there was *no breach* of the contract to which plaintiff was a party, it follows necessarily that defendant Nathan *could not conceivably be guilty of inducing a breach of contract.*

81 Ill.App.3d at 824–25, 37 Ill.Dec. at 5, 401 N.E.2d at 1098 (emphasis added).

*Id.* at 305, 42 Ill.Dec. at 546, 409 N.E.2d at 41. Fuller argues that the defendants tortiously interfered with the subcontracts by not paying Fuller money owed Fuller for work performed. Under *Mitchell,* however, such acts cannot serve as the predicate of tortious interference with Fuller's subcontracts, since those alleged acts were directed towards Fuller and not the third party subcontractors.

■ Neither of the two alleged direct acts taken by defendants toward the subcontractors (i.e., implying that Fuller would be terminated and negotiating directly with the subcontractors) can be deemed tortious interference. Assuming, as alleged in the complaint, that the defendants "implied" to certain unidentified subcontractors that Fuller's termination as general contractor was imminent, there is no allegation that these intimations were untruthful. Fuller cites no authority which would preclude a contracting party from truthfully commenting to others about the status of its contractual relationships. Furthermore, section 772 of the Restatement (Second) of Torts explicitly permits giving the third person truthful information.[4]

■ Likewise, the defendant's alleged settlement negotiations with the subcontractors cannot be considered acts of interference. Fuller alleges these purported discussions occurred after Fuller had been terminated as general contractor. The applicable rule was set forth by this court in *Marcus v. National Life Insurance Co.,* 422 F.2d 626, 630 (7th Cir.1970):

> If a breach was induced, the injury occurred when the breach occurred—at the time of the termination of the contract. There could not be a continuous inducement to carry on continuous breaches after the breach had in fact occurred.

Since there is no allegation in the complaint that Fuller's subcontract relationships survived Fuller's termination, these alleged post-termination acts are irrelevant.[5]

**B.  Contract with CCOM.**

■ With respect to defendants SGE, Kawalek and Schaerer, the element of malice is not sufficiently alleged in the complaint. As a general rule, the element of malice does not require ill will, hostility or an intent to injure. *Amalgamated Financial Corp. v. Atlantis, Inc.,* 105 Ill.App.3d 379, 61 Ill.Dec. 264, 434 N.E.2d 417 (1982); *Marcus v. Wilson,* 16 Ill.App.3d 724, 306 N.E.2d 554, 559 (1st Dist.1973). The plaintiff need only assert that the defendant acted "intentionally and without just cause." *Amalgamated Financial Corp. v. Atlantis, Inc.,* 105 Ill.App.3d 379, 61 Ill.Dec. 264, 434 N.E.2d 417 (1982). Illinois law determines just cause with a balancing test which takes into account the rationale for imposing tort liability upon persons interfering with the contractual relations of others—protection of contractual relations against legally repugnant forms of interference. *Swager,* 77 Ill.2d 173, 190, 32 Ill.Dec. 540, 547, 395 N.E.2d 921, 928.

> The question of justification therefore rests on whether protection of the contractual interest merits prohibition of the particular conduct which interferes with that interest.... Under certain circumstances a third party may be privileged purposely to bring about a breach of contract between other parties. This privilege occurs where the third party acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved.

*Schott v. Glover,* 109 Ill.App.3d 230, 234, 64 Ill.Dec. 824, 827, 440 N.E.2d 376, 379 (1st Dist.1982).

---

**4.** Section 772 provides:
One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person

(a) truthful information....
Restatement (Second) of Torts § 772(a) (1979).

**5.** This means of terminating the subcontract does not satisfy the breach element because the third party subcontractors did not personally terminate their subcontracts.

■ Corporate officers are not outsiders intermeddling maliciously in the business affairs of the corporation. They are privileged to act on behalf of their corporations, using their business judgment and discretion. *Loewenthal Securities Co. v. White Paving Co.,* 351 Ill. 285, 300, 184 N.E. 310, 316 (1932). Since officers hold policy-making positions, "their freedom of action aimed toward corporate benefit should not be curtailed by fear of personal liability. However, when the action is detrimental to the corporation and outside the scope of corporate authority, immunity ceases to exist." A. Avins, *Liability for Inducing A Corporation To Breach its Contract,* 43 Cornell L.Q. 55, 59 (1957) (cited with approval in *Swager,* 77 Ill.2d at 190, 32 Ill.Dec. at 547, 395 N.E.2d at 928). In light of these policies, Illinois law requires—to state a cause of action against corporate officers for interfering with their corporate principal's contract—the allegation of facts which, if true, establish that the officers induced the breach to further their personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the corporation. *See generally, Swager v. Couri,* 77 Ill.2d 173, 32 Ill.Dec. 540, 546–47, 395 N.E.2d 921, 927–28 (1979); *Loewenthal Securities Co. v. White Paving Co.,* 351 Ill. 285, 184 N.E. 310 (1932); *Worrick v. Flora,* 133 Ill.App.2d 755, 758–59, 272 N.E.2d 708, 711 (3d Dist.1971); *see also* A. Avins, *Liability for Inducing a Corporation to Breach its Contract,* 43 Cornell L.Q. 55 (1957).

■ A claim for intentional interference with contract could only be stated against Kawalek and Schaerer if the complaint alleged facts indicating that they interfered with Fuller's contract to build the project out of personal motive and without intent to further the interests of their principal CCOM. The complaint fails to meet this standard.[6] Fuller has alleged neither that the individual defendants acted contrary to the CCOM's interests, nor that either Kawalek or Schaerer acted for personal gain or out of animosity towards Fuller. The only intent which is alleged in the complaint pertains to the defendant's "ambition . . . to consummate the IEFA bond financing and proceed with construction of the new Olympia Fields hospital, and the fear that disclosure of the true facts would jeopardize these plans." Complaint ¶ 20. Thus, the defendants sought to further the interests of CCOM. Moreover, the bond financing was to help pay for both the hospital and the clinic project—ensuring available funds to pay Fuller if disputes had not arisen. Thus, the district court correctly dismissed the complaint for failure to state a cause of action for interference with contract against Kawalek and Schaerer.

■ Although Illinois courts have not specifically addressed a situation involving an architect, we conclude that Illinois would allow an architect a conditional privilege to interfere with the construction contract of its principal. The recent case of *Schott v. Glover,* 109 Ill.App.3d 230, 64 Ill.Dec. 824, 440 N.E.2d 376 (1st Dist.1982), indicates a broad protection for agents with regard to their principals' contracts and business relationships.[7] Furthermore, other jurisdictions

---

6. Although Fuller makes bald assertions of defendants' "malice" and "conspiratorial interference," the mere allegations of "malice," unsupported by any facts which show that defendants acted without justification or privilege, does not state a cause of action for tortious interference with contractual relations. In *Worrick v. Flora,* the Illinois Appellate Court affirmed the dismissal of the complaint for failure to state a cause of action for malicious interference with contract. The court noted that "[i]t seems to be plaintiff's theory that describing [defendant's] conduct as intentional and without just cause is a factual allegation of sufficient wrongful conduct.... The complaint is entirely lacking in any facts from which it may reasonably be inferred that [defendant] was acting other than in accord with his usual and customary duties on behalf of the corporation." 133 Ill.App.2d at 758, 272 N.E.2d at 711.

7. In *Schott,* the plaintiff alleged that the defendant, as attorney for a bank, had tortiously interfered with plaintiff's exclusive agency arrangement to secure office space for the bank in the Chicago area by falsely advising the bank that its contract with plaintiff had ceased, advising the bank to terminate the relationship, and misinforming the bank that a continuation of the exclusive agency relationship would result in office rentals inflated by the amount of

have recognized a privilege on behalf of architects while performing their contractual duties. *Ballou v. Basic Construction Co.,* 407 F.2d 1137 (4th Cir.1969) (applying Virginia law);[8] *Wyatt v. Ruck Construction, Inc.,* 117 Ariz. 186, 571 P.2d 683 (Ariz.App. 1977).

As with Kawalek and Schaerer, the complaint alleges that SGE's intent was to "consummate the IEFA bond financing and proceed with construction of the new Olympia Fields hospital," and to avoid disclosing any facts which might jeopardize these plans. Complaint ¶ 20. The alleged acts of interference by SGE all fall within SGE's contractual duties and there is no allegation that SGE acted contrary to CCOM's best interests. Absent the element of intent, no cause of action is stated.

█ Finally, as to the allegations against CCOM, a "defendant's breach of his own contract with the plaintiff is ... not a basis for the tort." Prosser, Torts § 129 at 934 (4th ed. 1971). *See also, Worrick v. Flora,* 133 Ill.App.2d 755, 759, 272 N.E.2d 708 (1971); *Mitchell v. Weiger,* 87 Ill.App.3d 302, 305, 42 Ill.Dec. 543, 409 N.E.2d 38 (1980). Thus, CCOM cannot be liable for allegedly interfering with its own contract.

AFFIRMED.

---

plaintiff's commission. In dismissing the complaint, the court stated that to impose liability on defendant would have "the undesirable effect of creating a duty to third parties which would have taken precedence over [defendant's] fiduciary duty [to the bank]." *Schott,* 109 Ill.App.3d 230, 234–35, 64 Ill.Dec. 824, 827, 440 N.E.2d 376, 379. The court considered it irrelevant whether the attorney's advice was correct in all aspects, because "[p]ublic policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect." *Id.* at 235, 64 Ill.Dec. at 827, 440 N.E.2d at 379. The court also enunciated the limited circumstances under which an agent could be held liable for tortious interference with his corporate principal's contract:

A plaintiff can state a cause of action for tortious interference with a contract against a third party who is conditionally privileged if the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist.... Such allegations, however, would necessarily include a desire to harm, which is independent of and unrelated to the [conditional privilege]. *Id.* at 235, 64 Ill.Dec. at 827, 440 N.E.2d at 380.

8. In *Ballou,* a concrete subcontractor for the construction of a hospital filed a cross-claim against the architects, alleging intentional interference with its contract with the general contractor. The architects had rejected certain concrete coated steel columns installed by the subcontractor, for failing to conform with the contract specifications. Ultimately, the general contractor relet the subcontract.

The Fourth Circuit affirmed the district court's grant of summary judgment in favor of the architect on the contractual interference claim on the ground that:

Under the contract the architect exercised a quasi-judicial function in accepting or rejecting work and that they were therefore immune from suit for their decision to reject the non-complying columns unless [the subcontractor] could show that fraud or bad faith motivated the decision.

407 F.2d at 1141. The court further noted that, although the "architects' decision to enforce literal compliance with the contract may have reflected poor judgment or excessive rigidity," there was no evidence of malice or bad faith. *Id.*