CERTIFIED MECHANICAL CONTRACTORS, INC., Plaintiff-Appellant, v. WIGHT & COMPANY, INC., Defendant-Appellee.

Second District No. 2—87—0032

Opinion filed October 30, 1987.

Burton A. Brown, of Law Offices of Burton A. Brown, P.C., of Chicago (Wayne G. Nelson, of counsel), for appellant.

Jay H. Tressler, of Tressler, Soderstrom, Maloney & Priess, of Wheaton (Francis A. Spina, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Certified Mechanical Contractors, Inc. (CMC), appeals from the judgment of the circuit court of Du Page County granting summary judgment to defendant, Wight & Co. (Wight), on count II of CMC's three-count complaint. Count I for libel arising from the preparation of an architectural report by Wight was dismissed, and Wight's motion for summary judgment on count III for libel arising out of the publication of a newspaper article was granted subsequent to the judgment entered here. CMC and Wight were engaged as general contractor and architect, respectively, by the Roman Catholic Diocese of Joliet (Diocese) for construction of a new parish center at St. Michael's Church in Wheaton, Illinois.

The essence of CMC's complaint in count II against Wight for intentional interference with contractual relations is that Wight, knowing of CMC's contract with the Diocese, wrongfully, maliciously and in bad faith interfered with that contract by causing the Diocese to order CMC to cease its operations on the project in order to allow tests to be conducted by Wight on the work performed by CMC. The results of the tests were reduced to a written report which outlined perceived construction problems in eight separate areas relating to

the poured-in-place concrete work and was inherently critical of CMC's job performance. The initial cessation of work on November 9, 1983, was to last 10 days; CMC's work on the project did not resume until April 1984. CMC claimed damages as a result of Wight's alleged wrongful conduct.

Wight's first motion for summary judgment on count II was denied. Its renewed motion for summary judgment was granted, the court's opinion being that there had been no breach of the contract (*i.e.*, CMC resumed its work on the project) and, therefore, one of the necessary elements of CMC's case was missing. Later, denying CMC's motion for reconsideration, the court opined that although CMC's contention that the delay of the construction contract may well have constituted a breach of the contract, it was the court's further opinion that Wight had a conditional privilege to advise the Diocese concerning the quality of the construction. The court stated it found no evidence, only speculation, which would support CMC's claim of malicious intent on Wight's part. The court subsequently also denied CMC's motions to make its judgment immediately appealable (107 Ill. 2d R. 304(a)) or for leave to amend count II. CMC brought the instant appeal after summary judgment was granted in Wight's favor on the remaining count III.

CMC contends the court erred in granting summary judgment on its intentional interference with contractual relations count because the record before the court raised the reasonable inference that Wight desired to injure it for reasons unrelated to and independent of its desire to properly advise the Diocese. CMC further contends it should have been allowed to amend count II. We affirm.

Initially, we address two motions filed by Wight and ordered to be taken with the case. In the first, Wight asks we dismiss CMC's appeal from the January 29, 1985, and December 16, 1986, orders of the trial court which, respectively, dismissed count I and granted summary judgment on count III. CMC filed neither an objection nor a reply to this motion and, in fact, concedes in its brief that the court's judgments as to counts I and III "are not being appealed." Accordingly, CMC's appeal from the court's judgments noted above is dismissed.

In its second motion, Wight asks we strike certain portions of CMC's "Statement of Facts" as violative of Supreme Court Rule 341(e)(6). (107 Ill. 2d R. 341(e)(6).) Insofar as that rule provides the facts necessary to an understanding of the case are to be "stated accurately and fairly without argument or comment," Wight finds CMC's "facts" are inaccurate recitations of the facts or are set forth in an improper editorial form containing conclusions or argument. The

four statements of "facts" Wight objects to are statements of opinion of CMC's president, Timothy Carlin. The statements were included in excerpts of his deposition attached to CMC's response to Wight's renewed motion for summary judgment, to wit: that it was apparent the project was going to be delayed due to Wight's "errors and omissions"; that the architect would be liable for additional costs if the project was delayed; that, therefore, Wight tried to convince the Diocese to remove CMC as general contractor; and that the report issued by Wight "contained gross misrepresentations and inaccuracies making [CMC] appear incompetent." Wight also objects to CMC's reference to the pleadings in a separate suit filed by the Diocese against Wight and CMC.

CMC filed no objections to Wight's motion, but argues in its reply brief that Wight "[i]n essence *** again is seeking to exclude evidence "which it had objected to in the trial court, but on which objection the trial court had not ruled." CMC contends Wight's failure to secure a ruling on its objection waives it, citing *Feldscher v. E & B, Inc.* (1983), 95 Ill. 2d 360. CMC further contends this court should disregard Wight's attack on the credibility of Carlin's affidavit by reference to certain deposition testimony of Carlin which was presented to the court in connection with the court's subsequent consideration of count III, but which was not available to the court during consideration of count II, which is at issue here. In those deposition excerpts noted by Wight, Carlin admits, in essence, the factual accuracy of Wight's report as to the condition of the work on the project, *i.e.*, that there was remedial work required on the concrete; that there were bowed forms and a crooked wall; that a keyway was omitted in a foundation wall; that reinforcing steel in many areas of the building was not in the proper place after concrete was poured; that there was more than one cold joint, one of which caused a weakening of the wall.

■ We agree with Wight that the complained-of excerpts from CMC's "Statement of Facts" must be stricken. The excerpts clearly are improperly set forth as facts, and, since they comprise a significant portion of CMC's 1½ page "Statement of Facts," this court's ability to review the case has been hindered. (*Cf. James v. Yasunaga* (1987), 157 Ill. App. 3d 450 (court denied appellee's motion to strike appellant's statement of facts where the brief included proper record references, set forth other fairly innocuous representations of fact and violations were not so flagrant as to hinder or preclude review).) CMC clearly made no effort to provide this court with a fair statement of the facts, and we will not abide such blatantly derisive treat-

ment. *Cf. Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1986), 149 Ill. App. 3d 53, 57-58, *appeal allowed* (1987), 113 Ill. 2d 576 (where, despite "a more argumentative statement of facts" than could be imagined, the court declined to grant the appellee's motion to strike appellant's statement of facts although it recognized that "at some point" sanctions would have to be imposed to prevent Supreme Court Rule 341(e)(6) from becoming a "pretend-rule").

CMC's contention Wight waived its objection to the statement is without merit. CMC does not provide record references for the "certain evidence" to which Wight allegedly objected at trial, nor does it state what that "certain evidence" was. As far as we can determine from the record, there is no identity between the deposition excerpts sought to be stricken here and the evidence Wight sought to have stricken in the trial court. Wight filed a written motion in the trial court on January 3, 1986, to strike as conclusions of law paragraphs 7 through 10 of Carlin's affidavit, which was filed in support of CMC's motion for reconsideration. In those paragraphs, Carlin averred the work stoppage violated various provisions of the contract between itself and the Diocese and caused damages. On January 21, 1986, Wight filed a second written motion to strike those same paragraphs 7 through 10 and paragraph 11, as well as exhibits I through Q, all purporting to support CMC's averment as to the damages it sustained by reason of Wight's conduct. Accordingly, the trial court could not have ruled on the matter sought to be stricken here, since it has just now been presented to this court.

As to the credibility of Carlin's affidavit in light of matters subsequently presented to the trial court in connection with count III, the scope of this court's consideration of the trial court's judgment is limited to the matters considered by the trial court in determining the motion for summary judgment. (See *In re Johnson* (1985), 134 Ill. App. 3d 365, 376 (what might have subsequently occurred, following hearing resulting in order from which appeal was taken, was not before the court on review).) Further, CMC's reference to the complaint filed by the Diocese against CMC is stricken. The complaint filed by the Diocese was appended to CMC's motion to reconsider and was alleged therein to be "new and significant evidence corroborating [its] allegations that the Diocese breached its contract with [CMC] although the contract was not terminated." The unproven allegations set forth in the complaint clearly provide no proof of the matter asserted by CMC.

CMC contends the court erred in granting Wight summary judgment where the record before it raised the reasonable inference that

Wight desired to injure it for reasons unrelated to and independent of its desire to properly advise the Diocese. Wight contends summary judgment was properly entered where there was no evidence the Diocese breached its contract with CMC, and there were no established facts or reasonable inferences sufficient to require a jury trial on the question of whether Wight intentionally and unjustifiably induced acts of the Diocese. CMC replies, noting that the terms "breach" and "termination" of contract are not synonymous, and contends it presented facts which showed the Diocese caused delay constituting a breach of its contract with CMC, and that Wight acted with actual malice in inducing the breach.

■ The tort of interference with contractual relations recognizes that a person's business relationships constitute a property interest and, as such, are entitled to protection from unjustified tampering by another. (*Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547.) "The purpose of imposing liability in tort upon persons who interfere with the contractual relations of others is to protect one's interest in his contractual relations against forms of interference which, on balance, the law finds repugnant. [Citations.]" *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 553.

The elements of an action for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. (*Hanzel Construction, Inc. v. Wehde & Southwick, Inc.* (1985), 130 Ill. App. 3d 196, 202; *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234.) Wight admits the ability of CMC to prove the first two elements but as to the third and fourth contends CMC failed to present facts or reasonable inferences which arguably would entitle it to a judgment.

In granting summary judgment to Wight, the court originally found there was no breach where the contract was not actually terminated but later, in denying reconsideration of its summary judgment, found that a delay of the construction contract constitutes a breach where the plaintiff suffers damages. As Wight points out, the court's judgment may be sustained on any ground justified by the record (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933), and Wight urges we find the breach element of CMC's cause of action was missing since the contract was not terminated.

■ We agree with CMC, however, that there need not be a termi-

nation of the contract before a cause of action for intentional interference with contractual relations obtains. The cases cited by Wight in support of its argument on this issue all speak in terms of breach *or* termination: *i.e., George A. Fuller Co. v. Chicago College of Osteopathic Medicine* (7th Cir. 1983), 719 F.2d 1326, 1330-31 ("the breach element of tortious interference with contract *** [requires] either a breach of the contract, termination of the contractual relations, or rendering performance impossible"); *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212 (count alleging intentional interference with an agreement to obtain a mortgage loan dismissed where defendants did not induce a breach of the contract or cause the third party not to perform its contract and count merely alleged that defendants interfered with plaintiffs' business affairs by efforts to increase the costs of the loan sought by plaintiffs); *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818 (teacher's suit against director of the defendant school for wrongful inducement of school's breach of its contract with teacher dismissed where facts showed the school discharged plaintiff in accordance with the applicable rules and, therefore, no breach of contract was shown); and *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468 (cause of action for a malicious interference with contract filed by several attorneys and their clients against an insurance company and its agents dismissed in the absence of factual allegations that the employment contracts were breached or terminated with resulting damage to plaintiffs). The failure to perform any term of a contract, no matter how minor, is a breach of contract. (*Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1986), 149 Ill. App. 3d 53, 62, *appeal allowed* (1987), 113 Ill. 2d 576.) "[F]or any breach that has occurred, be it large or small, 'partial or total', an action can be maintained and the law will give an appropriate remedy." (A. Corbin, Contracts sec. 948, at 930 (1952).) See also *Scholwin v. Johnson* (1986), 147 Ill. App. 3d 598.

 It is well established that, where a plaintiff is unable to establish an element of its cause of action through the pleadings, depositions, admissions and affidavits on file, summary judgment for the defendant is proper. (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76; *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58.) While a plaintiff is not required to prove his case at the summary judgment stage, he is under a duty to present a factual basis which would arguably entitle him to judgment. (*Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733.) The opponent of a motion for summary judgment may rely on reasonable inferences drawn from the materials considered on

the motion (*McCarthy v. Johnson* (1983), 122 Ill. App. 3d 104); such inferences are resolved in favor of the party opposing the motion for summary judgment. (*Casualty Insurance Co. v. Town & Country Pre-School Nursery, Inc.* (1986), 147 Ill. App. 3d 567; *Frazier v. Smith & Wesson* (1986), 140 Ill. App. 3d 963.) In ruling on a motion for summary judgment, the trial court must construe the motion, pleadings and supporting documents most strictly against the moving party and most liberally in favor of the opponent. (*In re Estate of Whittington* (1985), 107 Ill. 2d 169; *Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614.) Statements in an affidavit supporting summary judgment are taken as true unless the nonmoving party presents evidence to contradict them. (*Local 165 International Brotherhood of Electrical Workers v. Bradley* (1986), 149 Ill. App. 3d 193.) A party moving for summary judgment must affirmatively show a clear legal right thereto free from doubt, and if any facts upon which reasonable persons may disagree are identified, or inferences which may be drawn from those facts lead to different conclusions, the court must deny the motion and direct that resolution of those facts and inferences be made at trial. *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158.

Plaintiff here provided the affidavit of its president, Timothy Carlin, wherein he averred that, *inter alia*, the suspension was a work stoppage not included within the terms of the contract. This averment was not contradicted by evidence presented by Wight. Thus, there was a reasonable inference that the Diocese's suspension of CMC's work was a breach of its contract with CMC. Accordingly, Wight's claim that the court's judgment may be sustained on the ground there was no breach of the contract is without merit.

We find the court's summary judgment may be sustained, however, on the basis CMC failed to present facts which raised a reasonable inference that Wight acted with actual malice in inducing the Diocese to suspend CMC's work on the project.

The law recognizes that in many cases a third party may be privileged to purposely bring about a breach of plaintiff's contract with another. The third party is so "privileged" when he is acting to protect a conflicting interest that is considered under the law to be of a value equal to or greater than the plaintiff's contractual rights, provided, however, that the third party's acts to bring about the breach must be legal acts and must not be unreasonable in the circumstances. (*Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 555; *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 531; *Connaughton v. Gertz* (1981), 94 Ill. App. 3d

265, 269-70; Restatement (Second) of Torts sec. 767 (1979); W. Prosser, Torts sec. 129, at 936-37 (4th ed. 1971).) It has been established that an architect or engineer has a conditional privilege to interfere with the construction contract of its principal. *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 554-55; *Waldinger Corp. v. CRS Group Engineers, Inc.* (7th Cir. 1985), 775 F.2d 781, 790; *George A. Fuller Co. v. Chicago College of Osteopathic Medicine* (7th Cir. 1983), 719 F.2d 1326, 1333.

 A plaintiff can state a cause of action for tortious interference with a contract against a third party who is conditionally privileged if the plaintiff can set forth factual allegations from which *actual malice* may reasonably be said to exist. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546; *Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834; *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 235.) Actual malice means a positive desire and intention to annoy or injure another person. (*Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, 838.) To demonstrate malice, more than ill will must be shown, and the evidence must establish the defendant acted with a desire to harm which was unrelated to the interest he was presumably seeking to protect by bringing about the contract breach. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551; *Hanzel Construction, Inc. v. Wehde & Southwick, Inc.* (1985), 130 Ill. App. 3d 196, 202; *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 235.) If an architect induces a breach of contract, not to further its principal's best interest, but with the intent to harm the other party to its principal's contract or to further its personal goals, the architect is liable for tortious interference with the contract. *Waldinger Corp. v. CRS Group Engineers, Inc.* (7th. Cir. 1985), 775 F.2d 781, 790.

It is conceded that Wight was conditionally privileged to interfere with the contract between the Diocese and CMC. CMC contends, however, that Wight's interference was performed with actual malice. CMC asserts it presented evidence which raised the genuine issue of material fact of whether Wight attempted to have it removed from the project in order to cover up its own mistakes and omissions which would have caused the project to come to a halt. Wight's motive for shifting the blame for the delay to CMC was, CMC contends, to avoid its responsibility for increased construction costs caused by the delay. The mistakes and omissions CMC claims would have caused the project to come to a halt were the lack of brick selection, camber detail,

revised drawings necessary to secure a building permit, and timely issuance of submittal data.

Wight urges CMC's attempt to create a question of fact as to the existence of actual malice by reliance upon improper inferences or inadmissible opinions and conclusions of Timothy Carlin must fail. Wight acknowledges that reasonable inferences may defeat a motion for summary judgment, but argues that reasonable inferences are those based upon facts, not upon other inferences. Here, Wight contends, CMC's argument Wight intended to harm it is not supported by any established facts or reasonable inferences drawn from facts in the record, but by inferences based upon other inferences.

■■ We find the court correctly concluded there was no evidence, only speculation, supporting CMC's claim of malice in the communication between Wight and the Diocese regarding CMC's work. As Wight argues, the reasonable inferences which may be drawn in order to defeat a motion for summary judgment may not be based upon other inferences or presumptions. *Monaghan v. DiPaulo Construction Co.* (1986), 140 Ill. App. 3d 921; *Zide v. Jewel Tea Co.* (1963), 39 Ill. App. 2d 217; *Nystrom v. Bub* (1962), 36 Ill. App. 2d 333.

Excerpts from Carlin's deposition show he drew the inference that "[i]n October of 1983 the job was going to be coming to a standstill for various reasons. *** All of [Wight's omissions] would have caused the inevitable shutdown of this project within a matter of two or three weeks." Carlin further inferred that, "Wight and Company was well aware of the fact that the job was going to be shutdown because the things that [it] was remiss in doing, and the cost would have eventually came [sic] back to him. The best thing to do was to get rid of [CMC]." Carlin's opinion clearly amounts to an inference based upon another inference, not upon facts.

■■ ■ In determining the genuineness of a factual issue for purposes of a summary judgment motion, the court should ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence under the rules of evidence. (*Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715; *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549.) An opinion contained in a deposition is not a fact properly admissible for consideration by the court as the basis for a reasonable inference which could defeat a summary judgment motion. (*Kosten v. St. Anne's Hospital* (1985), 132 Ill. App. 3d 1073.) The sufficiency of affidavits offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191. (107 Ill. 2d R. 191.) A deposition may be used for any purpose for which an affidavit may be

used. (107 Ill. 2d R. 212(a)(4).) Summary judgment affidavits shall be made upon the personal knowledge of the affiant, shall not consist of conclusions but of facts admissible in evidence, and shall affirmatively show that the affiant, if sworn as a witness, could competently testify as to the facts set forth therein. *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584.

CMC claims the support for Carlin's deposition and affidavit (*i.e.*, various letters from the Diocese to Wight and CMC, meeting minutes, Carlin's knowledge of the construction industry, contract documents, and the complaint filed by the Diocese against Wight and CMC) serve as factual matters supporting his conclusion as to Wight's motive. However, the impropriety of the Diocese's complaint has already been noted, and none of the remaining supporting items were sworn or certified as required by Supreme Court Rule 191 (107 Ill. 2d R. 191) and could not be considered by the court. (*Cincinnati Insurance Co. v. Argubright* (1986), 151 Ill. App. 3d 324, 328-29.) Moreover, this court's attention has not been directed to any evidence in the record concerning the extent of Carlin's knowledge of the construction industry. As noted previously, Wight objected to various of these supporting documents. Although the court did not rule on its objection, it is evident the trial court here found no *factual* support for the reasonable inference of actual malice CMC urges, nor do we.

We do not find *Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, analogous to the instant cause. In that case, Miller sued the condominium association and its attorney, alleging the attorney had intentionally and maliciously interfered with her contract to sell her condominium unit. The trial court granted the attorney's motion for summary judgment on the ground the record did not present a triable issue of fact as to whether he had acted with intent and malice. We reversed on appeal, however, finding that Miller's evidence raised a reasonable inference, unfavorable to the attorney, which should have precluded summary judgment.

Miller's evidence was primarily a letter drafted by the attorney to a member of the board of managers of the condominium association advising the association that it not provide Miller with a "no assessments" letter which would enable her to sell her condominium until such time as she paid the amount of $1,125.20. (*Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, 837.) That amount represented his legal fees in connection with a forcible entry and detainer action brought, unsuccessfully, by the association against Miller. The attorney's first affidavit in support of his motion for summary judgment averred that he had acted in good faith and in his ca-

pacity as the association's attorney when he advised it to withhold the no assessments letter. This affidavit was stricken on Miller's motion alleging that the affidavit stated conclusions and not facts. The attorney's amended affidavit averred the fact of his pursuit of the forcible entry and detainer action against Miller on behalf of the association, its conclusion in Miller's favor, and his belief that Miller owed the association the amount of his fees.

In light of the attorney's failure to provide any basis for his apparent belief that he was entitled to collect his legal fees from the *prevailing* party in the forcible entry and detainer action, we found one reasonable inference from the fact of his letter was that he bore Miller ill will and had a positive desire to annoy or injure her by preventing her from attaining a no assessments letter and selling her condominium. This reasonable inference of actual malice was drawn from the *fact* of the statements in the attorney's letter which we found was properly before us on review.

For the reasons expressed above, the court's judgment granting Wight summary judgment is affirmed. Although specified in its notice of appeal, CMC makes no separate argument as to the court's denial of its motion for reconsideration; consequently we do not address the propriety of that judgment. Conversely, although CMC does argue the court's judgment denying it leave to amend count II was error, that judgment was not specified in CMC's notice of appeal and, therefore, is not reviewable. 107 Ill. 2d R. 303(c)(2); *Sterne v. Forrest* (1986), 145 Ill. App. 3d 268.

In sum, appellee's motions to dismiss portions of the appeal and to strike portions of appellant's "Statement of Facts" are granted, and the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DUNN and WOODWARD, JJ., concur.