**WHEEL MASTERS, INCORPORATED, Plaintiff–Appellee,**

v.

**JIFFY METAL PRODUCTS COMPANY, Defendant–Appellant.**

No. 90–3520.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1991.

Decided Feb. 3, 1992.

Anthony C. Valiulis, Kenneth Wexler, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., James P. Palermini, Huck, Bouma, Martin, Charlton & Zellner, Glen Ellyn, Ill., Gary K. Moore, Delbert J.

Brehman (argued), Moore & Maisel, Chicago, Ill., for plaintiff-appellee.

Joseph V. Roddy, Mark T. Zubor (argued), Chicago, Ill., for defendant-appellant.

Before WOOD, Jr.,[2] RIPPLE and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is a diversity suit between a California corporation, Wheel Masters, Incorporated ("Wheel Masters") and an Illinois partnership and corporation, Jiffy Metal Products Company ("Jiffy Metal"). At issue in this appeal is whether the trial court properly determined that Wheel Masters, the plaintiff-appellee, established the elements of its cause of action for tortious interference with contract. Jiffy Metal, the defendant-appellant, also raises a jurisdictional question. Specifically, Jiffy Metal contends that it was not properly a party to this suit because Wheel Masters named and served only Jiffy Metal Products Company, Incorporated, instead of Jiffy Metal Products Company, the partnership, until immediately before trial when the trial judge allowed Wheel Masters to amend its complaint to name both the corporation and the partnership. We resolve both of the issues raised on appeal in favor of Wheel Masters.

In May 1985 Jiffy Metal was in the metal stamping business. At that time Jiffy Metal entered into an agreement with a now-dissolved Illinois corporation, Namsco Incorporated ("Namsco"). Namsco manufactured and sold wheel covers[3] and engaged Jiffy Metal to do the metal stamping portion of the manufacturing process. The record contains a 1985 agreement between Mr. Stan Cag of Jiffy Metal and Mr. Robert Kinsella of Namsco indicating that Jiffy Metal would utilize Namsco's tools and dies to make the wheel covers. Jiffy Metal also purchased some machinery from Namsco as part of the business arrangement, but the bill of sale did not include Namsco's tools and dies.

In November 1985 Namsco filed for bankruptcy. Namsco neglected, however, to include in its list of assets the tools and dies that Jiffy Metal was using to make Namsco wheel covers. This oversight later became a major point of contention between the two parties because a great part of this lawsuit hinges on whether Jiffy Metal or Namsco owned the tools and dies.

In late 1986 Namsco solicited offers to purchase Namsco's assets as part of the company's bankruptcy reorganization. Jiffy Metal submitted an offer to purchase Namsco's assets, but the offer was not accepted. Wheel Masters also presented an offer to purchase Namsco's assets. Later, Tony Patti of Wheel Masters, Robert Kinsella of Namsco and John Manalli of Foothill Capital Corporation, Namsco's secured lender, signed a Business Assets Sales Agreement which set out the terms of the sale of Namsco's assets to Wheel Masters. The Business Assets Sales Agreement is dated January 16, 1987.

The Agreement specified that Wheel Masters would receive all of Namsco's tools and dies, but Jiffy Metal had possession of these tools and dies. When Kinsella asked Stan Cag of Jiffy Metal to give them back, Cag refused. Cag's refusal to give the tools and dies back to Kinsella was a major hitch in the asset sale to Tony Patti—Patti indicated that the tools and dies were essential to the deal. Cag, however, insisted that he was entitled to keep the tools and dies because Namsco had given them to Jiffy Metal and Jiffy Metal now owned them. Alternatively, Cag asserted that at the very least Jiffy Metal had a lien interest in the tools and dies because Jiffy Metal had spent approximately $40,000 to refurbish them in order to make wheel covers for Namsco.

Both Namsco representatives and Foothill representatives made attempts to recover the tools and dies from Jiffy Metal.

---

**2.** Judge Wood assumed senior status on January 16, 1992, which was after oral argument in this case.

**3.** Namsco manufactured wheel covers or "hubcaps" for recreational vehicles such as motor homes, travel trailers, vans and pickup trucks.

Jiffy Metal, however, stood fast in its refusal to give up the machinery, asserting finally that the tools and dies would be released for no less than $200,000. Because of Jiffy Metal's refusal to give the tools and dies back to Namsco, the Business Assets Sales Agreement was never performed. Wheel Masters was forced to have new tools and dies made and locate a new metal stamper to manufacture the wheel covers.

In September 1987 Wheel Masters filed a five-count suit against Jiffy Metal. Eventually, all counts except one claiming tortious interference with contract were dropped. Magistrate Lefkow heard the trial, and she found in favor of Wheel Masters. Judgment was entered against Jiffy Metal in the amount of $70,059.00. Jiffy Metal appealed to this court.

 In order to overturn Magistrate Lefkow's finding that Wheel Masters proved the elements of tortious interference with contract, we must find, after evaluating the record, that the magistrate's findings of fact are clearly erroneous. *Williams v. Lane,* 851 F.2d 867 (7th Cir.1988), *cert. denied, Lane v. Williams,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

 It is undisputed that Illinois law applies to this case. Under Illinois law, the elements of a tortious interference with contract claim are as follows: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *George A. Fuller Co., Div. of Northrop Corp. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1330–31 (7th Cir. 1983); *Certified Mechanical Contractors, Inc. v. Wight & Co.,* 162 Ill.App.3d 391, 515 N.E.2d 1047, 113 Ill.Dec. 888 (2d Dist.1987). Jiffy Metal contends that the testimony and evidence produced at trial do not establish the first, second and third elements of a tortious interference with contract claim. Jiffy Metal argues further that the trial court erred in establishing the amount of damages.

 The magistrate found that the Business Assets Sales Agreement, dated January 17, 1987, and signed by representatives of Wheel Masters, Namsco and Foothill, is prima facie evidence of a valid and enforceable contract. Jiffy Metal contends that there was no "meeting of the minds" between the contracting parties because Wheel Masters did not pay Namsco $25,000 immediately upon execution of the Agreement, as the Agreement specified, and because there were some blanks and cross-outs on the document. The trial court stated that Wheel Masters's failure to make the $25,000 payment was evidence of a breach. Of course, in a tortious interference with contract claim, the plaintiff must produce evidence proving that a *third party,* here Namsco, breached the Agreement. A party cannot make a successful claim by proving its own breach. *See George A. Fuller,* 719 F.2d at 1334. Regardless of the magistrate's finding concerning Wheel Masters's failure to pay Namsco $25,000 upon execution, we agree with the trial court that there existed a valid and enforceable contract. There was ample evidence produced at trial which showed that the essential terms of the sale had been agreed upon by the contracting parties. The fact that Wheel Masters did not pay the $25,000 is not fatal to the magistrate's finding that there was a valid and enforceable contract because the payment was not a condition precedent to the agreement. Similarly, the cross-outs of minor portions of the document do not preclude a finding of agreement. *See, for example, Interway, Inc. v. Alagna,* 85 Ill.App.3d 1094, 407 N.E.2d 615, 41 Ill.Dec. 117 (1st Dist. 1980) (stating that "the fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements 'mere negotiations, where it is clear that the ultimate contract will be substantially' based upon

the same terms as the previous document").

■ The next issue is Jiffy Metal's awareness of the contractual relationship between Wheel Masters and Namsco. In this case, Namsco's president, Kinsella, testified that he told one of Jiffy Metal's partners, Cag, that Tony Patti of Wheel Masters was going to buy Namsco prior to the signing of the agreement. Kinsella then testified that after the Agreement was signed, he had several conversations with Cag in which he represented to Cag that a "deal had been cut." Tony Patti also testified that he told Cag that he had entered into an agreement with Kinsella, but Patti was vague about the dates of the conversation. The trial court also pointed to a letter, dated after the Agreement was signed, from Cag's attorney to Foothill as an "admission" that Jiffy Metal knew of the contract. Jiffy Metal persuasively contends, however, that the letter is evidence of its *lack* of awareness. In the letter Cag's attorney makes reference to "the alleged contemplated sale to Mr. Patti" and states that Foothill told Jiffy Metal that it "would probably accept Mr. Patti's offer." It seems that the letter is, at most, evidence that Cag was aware of negotiations between Wheel Masters and Namsco. In any event, that the letter could possibly resolve the issue of Jiffy Metal's awareness in Jiffy Metal's favor is not dispositive. On review, we will not disturb the lower court's finding simply because we come to a different conclusion upon evaluating a single piece of evidence. *See Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988). Magistrate Lefkow's decision that Jiffy Metal was aware of the contractual relationship between Wheel Masters and Namsco turned on her evaluation of the witnesses' credibility as well as her assessment of the documents in evidence. This evidence supports a finding that Jiffy Metal knew of the existence of the contract or that Jiffy Metal knew of facts from which a contract could reasonably have been inferred, which is all that is necessary under Illinois law. *See Farley v. Kissell Co.,* 18 Ill.App.3d 139, 310 N.E.2d 385, 389 (1st Dist.1974).

We now come to the third, and perhaps most crucial, element of the tortious interference with contract claim. Was Jiffy Metal's interference with the contract between Namsco and Wheel Masters intentional and unjust? The answer to this question turns on the type of interest Jiffy Metal had in the tools and dies. Jiffy Metal argues that it owned the tools and dies, or at the very least, had a lien interest equal to the amount it spent in refurbishing them. Wheel Masters says that the evidence overwhelmingly supports the trial court's finding that Namsco owned the tools and dies. The trial court did find that Jiffy Metal had some interest in the tools and dies—an artisan's lien for $40,000. The trial court also found that Jiffy Metal could not justifiably assert the lien to block performance of the contract between Namsco and Wheel Masters in the face of offers to pay the lien. We will analyze only the justification of Jiffy Metal's assertion of its lien interest against Wheel Masters's contractual interest because the trial court's finding that Jiffy Metal did not own the tools and dies is not clearly erroneous.[4]

■ Whether Jiffy Metal was privileged to protect its lien interest by interfering with the contract between Namsco and Wheel Masters depends upon two factors. First, Jiffy Metal was allowed to purposefully bring about breach if it was protecting an interest that is equal to or greater than Wheel Masters's contractual rights. Second, Jiffy Metal's acts must not be unreasonable under the circumstances. *R.J.N. Corp. v. Connelly Food Products, Inc.,* 175 Ill.App.3d 655, 529 N.E.2d 1184, 125 Ill.Dec. 108 (1st Dist.1988); *Connaughton v. Gertz,* 94 Ill.App.3d 265, 418 N.E.2d

---

4. Jiffy Metals argues at length that the evidence of Namsco's ownership of the tools and dies is conflicting. There was sufficient evidence for the trial court to determine, without error, that Jiffy Metals did not own the tools and dies. *See* *Stern v. Tarrant County Hosp. Dist.,* 778 F.2d 1052 (5th Cir.1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986) (district court's factual conclusion based on conflicting evidence is binding on court of appeals).

858, 49 Ill.Dec. 838 (1st Dist.1981). The artisan's possessory lien of the common law is recognized in Illinois. *National Bank of Joliet v. Bergeron Cadillac, Inc.*, 66 Ill.2d 140, 361 N.E.2d 1116, 5 Ill.Dec. 588 (1977). And, a creditor has a legal right to invoke lien provisions of the law to compel payment of a just debt. Thus, at first glance it seems that Jiffy Metal's lien interest in the tools and dies was at least equal to Wheel Masters's contractual interest, and Jiffy Metal was justified in interfering. However, the evidence also shows that Jiffy Metal unjustifiably refused to accept payment of the lien when offers were made to do so by Foothill representatives and by Namsco. Instead of accepting payment, Jiffy Metal asked for more and more money for the tools and dies, when in fact, the lien was worth only $40,000 by Jiffy Metal's own admission. Jiffy Metal had a protectible interest, but Jiffy Metal acted unreasonably to protect it under the circumstances, and Jiffy Metal's actions resulted in Namsco's failure to perform the Agreement at a considerable loss to Namsco.

Jiffy Metal's unjustified conduct made it impossible for the Agreement to be performed, satisfying the fourth element of a tortious interference with contract claim. *Bailey v. Meisterbrau, Inc.*, 535 F.2d 982 (7th Cir.1979). Jiffy Metal does not contest that it caused the breach; however, Jiffy Metal contends that the trial court erred in assessing the damages flowing from the breach. On the contrary, the trial court's assessment is careful and considered. Magistrate Lefkow weighed all of the evidence and awarded Wheel Masters's 25% of the midpoint of Wheel Masters's five-year damage projection after she concluded that Jiffy Metal's actions caused approximately 25% of Wheel Masters's business interruption damage. Our standard of review of Magistrate Lefkow's damage award is the same as our standard of review of any factual finding—the damage award cannot be overturned unless the factual basis for the award is clearly erroneous.

Finally, Jiffy Metal asserts that it was improper for the district court to assert jurisdiction over it. To support this argument Jiffy Metal explains that Wheel Masters's original complaint named Jiffy Metal Products Company, the *corporation*, not the *partnership*, when the partnership was the entity that performed the metal stamping for Namsco. In its answer, Jiffy Metal denied that the corporation did metal stamping and stated that partnership was the entity that did the stamping. In an amended complaint, Wheel Masters again designated Jiffy Metal a corporation, and Jiffy Metal again denied the allegation. Immediately before trial, Wheel Masters sought to file an amended complaint designating Jiffy Metal as both a partnership and a corporation. The trial court allowed the amendment: so do we. The amendment simply corrected a misnomer—the defendant was already before the court. Jiffy Metal, the partnership, was not a new party before the court as Jiffy Metal now argues. A case cited in Jiffy Metal's own brief supports our conclusion: "Where a pleading describes a party to the action as a corporation when in fact it was not a corporation but a partnership, ... the Court should permit the pleadings to be amended rather than dismiss the action." *Bowles v. Marx Hide & Tallow Co.*, 4 F.R.D. 297, 298 (W.D.Ky.1945).

The trial court's judgment in favor of Wheel Masters on its claim for tortious interference with contract and the trial court's decision to allow Wheel Masters to amend its complaint to name Jiffy Metal Products Company, the partnership, immediately before trial are

AFFIRMED.