(No. 26576.—

IN RE DAVID H. GREENBERG, Attorney, Respondent.

*Opinion filed September 21, 1942—Rehearing denied Nov. 10, 1942.*

418

WILSON, J., dissenting.

CHARLES LEVITON, *amicus curiae.*

ORR, VAIL, LEWIS & ORR, for respondent.

Mr. JUSTICE GUNN delivered the opinion of the court:

The Committee on Grievances of the Chicago Bar Association, as Commissioners of the Supreme Court of Illinois under Rule 59, filed its report with this court recommending the disbarment of the respondent David H. Greenberg. The complaint in substance charges the respondent was guilty of subornation of perjury of a certain witness in a trial had in the United States District Court for the Northern District of Indiana, April 13, 1939. On this date a personal injury suit was being tried in said court, and respondent represented the defendants, and called as a witness one Henry C. Jacobsen, who upon direct examination testified upon matters substantially beneficial to the defendants. Upon cross-examination he testified the matters sworn to in chief were false, and that respondent was instrumental in procuring him to testify falsely.

An accident occurred July 19, 1938, upon U. S. highway No. 12 near Michigan Shores, Michigan, in which the clients of respondent were severely injured by a trailer truck running into the car occupied by them parked by the roadside. The driver of the truck first filed suit, and Greenberg's clients procured a removal of said cause to

the United States District Court. On behalf of his client Greenberg also filed a suit against the trucking company and the truck driver, as well as filing a cross-complaint in the original suit.

The evidence shows that at the time this accident occurred there were few if any eyewitnesses known to respondent as attorney for defendants, and that he made an extended search for someone who might have witnessed the accident, and finally learned of the witness Jacobsen. He located him in Evanston, Illinois, and according to respondent's testimony Jacobsen claimed he had witnessed the accident, and later went out to the place it occurred and pointed out the respective locations of the two vehicles at the time of the accident.

The name of this witness was communicated to the insurance carrier of Greenberg's clients. When called as a witness Jacobsen gave a detailed statement of what occurred. During the noon hour after he had left, a person who was engaged in the business of investigating automobile accidents, and who was indirectly interested in the result of the suit, in conjunction with plaintiff's attorney, procured Jacobsen's return to the court room, and had a few moments private conversation with him, and then Jacobsen was accused by a deputy United States marshal of having committed perjury in his original testimony, and was told he was in custody. The officer admitted he had no orders to arrest Jacobsen, but it was a part of the arrangement between the investigator and plaintiff's attorney and himself in order to ascertain whether the witness had testified truthfully on direct examination; and after the witness had been talked to and placed in apparent custody he admitted he had testified falsely, and agreed to go upon the witness stand and repudiate his testimony.

Respondent denied he had any knowledge that the testimony of Jacobsen was false, or that he had anything whatever to do with suborning him as a witness. The tes-

timony shows Jacobsen was commonly and generally known as "Jakie the Rat;" that his reputation for truth and veracity was very bad; that he had been engaged in fights, was quarrelsome, and was universally disliked by his co-employees. The evidence also shows the respondent was a graduate of a university, and admitted to the bar in 1915, and bore a good reputation, and had never had any complaints made against him in the practice of law.

The commissioners found Jacobsen had committed perjury when he testified he was present at the scene of the accident, and the respondent was guilty of suborning such testimony. We do not think either conclusion is established by clear and convincing testimony. It is not established to our minds that the perjury committed by Jacobsen was in his direct examination. According to the testimony of the lawyer representing the insurance carrier of the clients represented by Greenberg, Jacobsen's testimony was clear and apparently truthful. After Jacobsen had been found by Greenberg and had been taken to the place where it is claimed the accident occurred, Jacobsen went to the house of one Farmer, who lived within a short distance of the scene of the accident, and called him by name and claimed in the presence of this individual he had seen him on the day of the accident, and while Farmer did not remember him, and could not be sure Jacobsen was the man who had helped him put the injured persons into another car, it would be impressive in convincing respondent that Jacobsen had actually been at the scene of the accident.

The testimony of Marie Carpenter, who owned a fruit stand near the scene of the accident, is that Jacobsen talked to her at the fruit stand immediately after the accident, and that she remembered him well because of the offensive manner in which he conducted himself towards her. Under the circumstances there is evidence tending to show Jacobsen was actually present. There is no testimony he was not present except his own, and of some of the persons

who assisted in carrying away the injured persons, who say they do not remember whether he was the man or not. Their testimony is wholly negative.

The circumstances under which Jacobsen changed his testimony is more suggestive of the fact he was induced so to do than that he had been induced to commit perjury by respondent. Whether Jacobsen was actually present or otherwise is not really material to the issue in this case. It is overwhelmingly established he was a liar and a perjurer and wholly unworthy of belief, and was otherwise entirely deserving of the pseudonym of Jakie the Rat. It is upon his testimony and the assumption it had been established he was telling the truth upon cross-examination that the commissioners found the respondent was guilty of suborning him. There are a number of circumstances offered in evidence tending to show Greenberg had once handled some litigation for Jacobsen, and that respondent must have known of Jacobsen's disreputable character, and that Jacobsen had been paid $10 for the time spent in going with respondent to the place of the accident in Michigan.

In cases of this kind to inflict the punishment of disbarment the case must be clear and free from doubt both as to the act charged and as to the motive. (*People ex rel. Chicago Bar Ass'n* v. *Gorindar,* 350 Ill. 256; *People ex rel. Chicago Bar Ass'n* v. *Baker,* 311 id. 66.) It is no unusual thing for an attorney to be surprised by the testimony of a witness he has placed upon the stand, and it is not to be inferred from this fact alone, in case a witness commits perjury, that the lawyer is guilty of inducing it.

In order to become eligible to admission to the bar the respondent must establish his character and fitness, and when that is followed by twenty-five years of reputable practice it is not to be lightly overcome by the testimony of a confessed perjurer. Moreover, the circumstances in this case have as much of a tendency to establish the testimony of Jacobsen on cross-examination was affected by

his conversation with the parties who had procured his being taken into custody and accusing him of false swearing, as does the evidence his original testimony was falsely procured by respondent. This does not mean such result would excuse the respondent, if guilty, but it does throw grave doubt upon the question of whether Jacobsen actually saw the accident, or whether he did not see it.

Several findings have been made by the commissioners which have no bearing upon the guilt or innocence of the respondent, such as finding the good faith and lack of animus of the witnesses against respondent. Such attitude is presumed in a trial of any kind. The commissioners take the view because witnesses offered by respondent knew the reputation of Jacobsen for truth and veracity hence respondent must have known of such reputation. But even if this be true, we do not think it necessarily follows that subornation of perjury is established by placing upon the witness stand one who has a bad reputation for truth and veracity. If Jacobsen was in fact an eyewitness, it would not in any way have been reprehensible for Greenberg to put Jacobsen upon the witness stand for what his testimony was worth, as the jury is the judge of a witness's credibility.

We are clearly of the opinion the credible evidence fails to establish any misconduct upon the part of the respondent, as it is based almost entirely upon the testimony of a perjurer, and the facts are so confused that it is not established which time, if at all, Jacobsen was testifying truthfully. We think the commissioners entirely overlooked the character of proof required to take from a lawyer of established reputation his right to practice law.

The recommendation of the commissioners is denied, and the rule discharged.                *Rule discharged.*

Mr. Justice Wilson, dissenting.