(No. 71176.—

*In re* ALPHONSE FRANK WITT, Attorney, Respondent.

*Opinion filed November 21, 1991.*

MORAN, J., took no part.

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins and Theresa M. Gronkiewicz, of Collins & Bargione, of Chicago, for respondent.

JUSTICE FREEMAN delivered the opinion of the court:

On July 21, 1988, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a three-count complaint charging that respondent, Alphonse Frank Witt, had violated various provisions of the Illinois Code of Professional Responsibility. (107 Ill. 2d R. 1—101 *et seq.* (superseded by Rules of Professional Conduct, 134 Ill. 2d R. 1.1 *et seq.*).) Specifically, counts I and II of the complaint alleged that respondent, while sitting as a judge in the circuit court of Lake County, had importuned loans from an attorney who practiced before him and that respondent failed to disclose this debtor-creditor relationship. Count III alleged that respondent failed to disclose the debtor-creditor relationship on his "Declaration of Economic Interest" statement. (87 Ill. 2d R. 68.) The complaint alleged that, as a result of this conduct, respondent had violated Disciplinary Rules 1—102(a)(2) (107 Ill. 2d R. 1—102(a)(2)) (circumvention of a disciplinary rule through the actions of another); 1—102(a)(4) (107 Ill. 2d R. 1—102(a)(4)) (engaging in conduct involving fraud, deceit or misrepresentation); 1—102(a)(5) (107 Ill. 2d R. 1—102(a)(5)) (engaging in conduct that is prejudicial to the administration of justice); and Canon 9 (107 Ill. 2d Canon 9) (failure to avoid the appearance of impropriety).

In his answer, respondent denied that he was "guilty of conduct which tends to defeat the administration of justice or to bring the court and legal profession into dis-

repute," and raised certain affirmative defenses. He admitted the debtor-creditor relationship and the allegations that he failed to disclose that relationship.

A panel of the Hearing Board (Board) determined that as to all three counts respondent had violated Rule 1—102(a)(5) and Canon 9. (In its report the Hearing Board stated that respondent had violated "Rule 1—102(a)(9)." There is no such rule. It is apparent from the discussion in the report that the Board meant that respondent had violated Rule 1—102(a)(5).) The Board concluded, however, that as to counts I and II, the evidence did not disclose a violation of Rule 1—102(a)(2), and as to all counts, respondent did not violate Rule 1—102(a)(4). The Board recommended that respondent be suspended from the practice of law for 30 days.

The Administrator filed timely exceptions to the report and recommendation of the Hearing Board with the Review Board. (107 Ill. 2d R. 753(e)(1).) The Review Board adopted the findings of fact and conclusions of law of the Hearing Board and concurred in recommending a 30-day suspension. This court granted the Administrator leave to file exceptions to the report and recommendations of the Review Board. 107 Ill. 2d R. 753(e)(6).

## RESPONDENT'S BACKGROUND

Respondent was admitted to practice law in Illinois on May 17, 1966. On July 16, 1976, respondent was appointed an associate judge of the circuit court of Lake County, during which time he presided over traffic cases in the Lake County branch courts. After a year or two, respondent was transferred to the Lake County courthouse in Waukegan and was eventually assigned to hear family law and criminal cases. He was subsequently appointed presiding judge of the chancery and probate divisions. Respondent continued to hear criminal cases not-

withstanding his various appointments as presiding judge.

In 1986, after serving on the bench for 10 years, respondent resigned his judicial office. He subsequently joined the law firm of Schiller, DuCanto and Fleck, concentrating his practice in the area of domestic relations. Respondent left the firm in August 1987. At the time of these disciplinary proceedings respondent was a sole practitioner in Waukegan.

## FACTS

The facts are not in dispute. Respondent met Steven Lunardi in 1973 or 1974 when both men served in the Lake County State's Attorney's office. The two men developed a close friendship. During 1976 and 1977, while still employed as an assistant State's Attorney, Lunardi prosecuted a number of cases before respondent. When Lunardi entered private practice in 1978, he continued to appear before respondent on a regular basis. Lunardi's office was located directly across the street from the courthouse where respondent had his chambers. Respondent would frequently have social visits with Lunardi during the noon court recess.

### The First Loan

According to respondent, in 1981 or 1982, the State Treasurer sent the associate judges an empty pay envelope. In anticipation of receiving his pay, respondent had written approximately $1,200 to $1,400 in checks for payment of his monthly bills. He did not have money to cover these checks. When he did not receive his pay, respondent approached Lunardi for a personal loan. Lunardi had no cases pending before respondent at that time. Lunardi agreed to lend respondent a sum between $1,200 and $1,400 and immediately gave respondent a check for the agreed-upon amount. No promissory note

was taken, no security was involved, and the loan was interest free. After receiving the loan from Lunardi, respondent "covered" the checks which he had written. Within two or three days, respondent received his pay and immediately repaid Lunardi.

### The 1984 Loan

Respondent testified that in October 1984 he recognized that he was short of money needed to pay his real estate taxes. At one of his noon visits with Lunardi, Lunardi told respondent that he had recently sold his condominium and that he was "flush with money." Respondent asked Lunardi for a $1,100 loan and Lunardi agreed. The loan was unsecured and was not evidenced by a promissory note. According to their agreement, respondent would repay the loan in $100 monthly installments until the loan was repaid. It was also understood that respondent would give Lunardi an extra $100 as interest. On November 13, 1984, respondent received a check from Lunardi for the agreed-upon loan amount.

Respondent commenced repayment of the loan in January 1985. Repayment was made by check and the loan was fully repaid, with interest, by November or December 1986.

In late November of 1984, after respondent received the loan proceeds, but before he made any repayment of the obligation, Lunardi appeared before him on behalf of a defendant in a criminal bench trial (People v. Martiny). At no time did either respondent or Lunardi ever reveal to the opposing party the existence of their debtor-creditor relationship.

People v. Martiny involved allegations of assault and battery. After the Martiny trial had started, Lunardi demanded that the trial stop so that a court reporter could be brought in. Police officers who investigated the battery complaint were called as defense witnesses. Their

testimony directly contradicted the plaintiff's photographic evidence depicting injury. At the close of all the proofs, respondent acquitted the defendant.

During the time that the 1984 loan was outstanding, Lunardi appeared before respondent on two other occasions. In one case, People v. Shanahan, Lunardi moved for a substitution of judges, which respondent granted. In the other instance, Lunardi represented a defendant in a forfeiture case in which respondent entered an order of forfeiture, signed November 30, 1984, against the defendant.

Respondent testified that he acquitted defendant Martiny because the evidence convinced him "beyond a reasonable doubt" that he was not guilty. David Semmelman, the prosecuting attorney in the Martiny case, testified that he was aware of the friendship between respondent and Lunardi at the time of the Martiny trial. Although he would have liked to have known about the debtor-creditor relationship, Semmelman stated that he would not have done anything differently had he known.

### Declaration of Economic Interest

During 1985, respondent, as an associate judge, was required to file a "Declaration of Economic Interest" statement with the Director of the Administrative Office of the Illinois Courts. Respondent testified that the purpose of filing the statement is "to disclose what interests you as a judge may have which would interfere with the proper administration of justice." On March 11, 1985, respondent signed his verified 1985 statement. In response to question six, which stated: "My economic interests and relationships and those of my wife and our minor children residing with us, other than those listed in numbered paragraphs 1 to 5 hereof, which could create substantial conflicts of interest for me in my judicial capacity are as follows," respondent answered, "None."

Respondent testified that he thought that he had to list persons to whom he owed over $1,000. At the time respondent filed this declaration he owed Lunardi $800.

On May 21, 1985, Lunardi was arrested for possession of cocaine. In his wallet he had a check for $100 drawn on one of respondent's bank accounts. The proceeds of this check constituted a monthly payment of respondent's 1984 loan obligation to Lunardi.

Three days after his arrest, Lunardi informed respondent that the check had been inventoried by police officials. Thereafter, respondent informed his chief judge of his debtor-creditor relationship with Lunardi. Subsequently, the Judicial Inquiry Board initiated an investigation against respondent. Prior to any proceeding before the Inquiry Board, respondent resigned his judgeship. On July 18, 1989, as a result of his violation of Rule 7—110(a) (107 Ill. 2d R. 7—110(a)), and conviction for possession of a controlled substance, Lunardi was suspended from the practice of law for a period of 18 months. *In re Lunardi* (1989), 127 Ill. 2d 413.

Respondent was interviewed by two assistant attorneys general who were investigating the Lunardi incident. One of the attorneys advised respondent to file an amended "Declaration of Economic Interest," disclosing the outstanding balance of the Lunardi loan. Respondent testified that, in his mind, the loan created "neither a substantial conflict nor a simple conflict"; however, on the advice of the attorney, he agreed to file an amendment. At the time of the filing of the amended statement, respondent owed Lunardi $200.

## STANDARD OF REVIEW

In attorney disciplinary proceedings, misconduct must be proved by clear and convincing evidence. (134 Ill. 2d R. 753(c)(6).) Findings of fact made by the Hearing Board are entitled to the same weight as are the find-

ings of any initial trier of fact. (*In re Anglin* (1988), 122 Ill. 2d 531, 538.) We accord those findings great deference, for it is the Board that is able to observe the demeanor of witnesses, judge their credibility and evaluate any conflicting testimony. (*In re Wigoda* (1979), 77 Ill. 2d 154, 158.) We will not disturb the Board's factual findings unless they are against the manifest weight of the evidence. *In re Karzov* (1988), 126 Ill. 2d 33, 39.

## DISCUSSION

The Administrator first contends that the Board erred in not finding that respondent engaged in fraud when he failed to disclose the debtor-creditor relationship to the opposing party in the Martiny case. He maintains that respondent's failure to be candid constituted a fraud upon the court and the opposing party. The Administrator asserts that notwithstanding the lack of a specific improper intent in obtaining the loans, Lunardi's opposing counsel, as well as the citizens of our State, would be concerned about a judge's presiding over a trial in which one of the parties is represented by an attorney to whom the judge owes money. By failing to disclose the debtor-creditor relationship, the Administrator argues, respondent committed "actionable fraud" in violation of Rule 1—102(a)(4).

Respondent urges that we defer to the findings of the Board on this issue. He concludes that the Board's specific finding that there was no fraud should preclude any sanction based thereon.

"Fraud includes anything calculated to deceive, whether it be a single act or combination of circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture." (*People ex rel. Chicago Bar Association v. Gilmore* (1931), 345 Ill. 28, 46; *In re Armen-*

*trout* (1983), 99 Ill. 2d 242.) The basic elements of fraud and deceit are: (1) a false representation of a material fact; (2) the defendant must know of the falsity but, nevertheless, makes the statement for the purpose of inducing the plaintiff to rely on it; (3) the plaintiff must justifiably rely on the statement; and (4) the plaintiff must have suffered damages as a consequence. *Burkhart v. Allson Realty Trust* (N.D. Ill. 1973), 363 F. Supp. 1286, 1291.

As this court stated in *In re Neistein* (1989), 132 Ill. 2d 104, 111, "The making of a loan to a sitting judge *** erodes and damages the public confidence in the bar, the judiciary and the entire legal system." Obviously, respondent's failure to disclose the debtor-creditor relationship called into the question his impartiality while sitting as a judge. Although the respondents in *Neistein* were attorneys making loans to a judge, clearly, the system is no less harmed by a judge's improper solicitation and receipt of a loan from an attorney.

However, while we consider that respondent's failure to disclose the debtor-creditor relationship was improper, we are not persuaded that his silence was intended to perpetrate a fraud upon the other party in the Martiny case.

In reaching this conclusion, we defer to the findings of the Board. The Board specifically found that respondent, "whether intentionally or innocently failed to inform litigants appearing before him that he and Mr. Lunardi had a debtor-creditor relationship." This action, the Board stated, violated Rule 1—102(a)(5), thereby violating Canon 9.

However, the Board concluded that it did not believe that respondent engaged in conduct involving fraud, deceit or misrepresentation. In so concluding, the Board noted that the transactions between Lunardi and respondent were the result of legitimate business transac-

tions and not for any illegal or improper purpose. It further noted that respondent "scrupulously" complied with the terms of the loan agreements in each instance, repaying the debt as promised with the agreed-upon amount of interest.

We are also mindful that there is no question regarding the propriety of respondent's ruling in the Martiny case. Respondent testified that when he borrowed the money from Lunardi, there was no discussion between the two of them as to how respondent would decide cases brought before him by Lunardi. Respondent stated that at the time of the Martiny trial, the fact that he owed Lunardi money "must have come past through [his] mind"; however, that fact did not influence his decision in the case. He ruled in favor of the defendant Martiny because the evidence convinced him that the defendant was not guilty. Further, we note that even though opposing counsel would have been entitled to a substitution of judges, it was his testimony that knowledge of the debtor-creditor relationship "would not have mattered"; he still would have gone to trial before respondent.

After a review of the record, we agree with the findings of the Board. There was no showing that respondent's nondisclosure was for any improper purpose. While, clearly, the evidence supports a finding that respondent violated the Code, the elements necessary for a finding of fraud have not been proved. Compare *In re D'Angelo* (1988), 126 Ill. 2d 45.

The Administrator next contends that the Board erred in not finding fraud for respondent's failure to disclose the 1984 loan on his 1985 "Declaration of Economic Interest." (87 Ill. 2d R. 68.) He reasons that it is not unreasonable to assume that respondent was not motivated to be candid on his financial statement because

revealing the loan might have resulted in an inquiry concerning the loan agreement.

As a "subsidiary" issue, respondent questions whether the ARDC should inquire into a "Declaration of Economic Interest" statement submitted by a judge in his judicial capacity. The Administrator urges that this issue, having not been presented to the Review Board, is waived.

The question raises an issue of subject matter jurisdiction, which cannot be waived by the parties. (*People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 170; *Board of Trustees of Community College District No. 508 v. Burris* (1987), 118 Ill. 2d 465, 471.) Thus, prior to addressing the Administrator's contention, we will give brief attention to respondent's question. We note that during the preliminary stages of these proceedings, respondent moved for a dismissal, asserting a lack of authority by the ARDC to conduct disciplinary proceedings on charges of misconduct by judges. Both parties thoroughly briefed the issue. The Board concluded, based upon the arguments presented, that the ARDC had the authority to conduct proceedings in this matter.

One case cited in support of the ARDC's authority, which we believe to be significant, is *In re McGarry* (1942), 380 Ill. 359. In *McGarry*, the board of managers of the Chicago Bar Association, as commissioners of the Illinois Supreme Court, filed a report recommending that respondent McGarry be disbarred and that his name be stricken from the roll of attorneys. The report involved the respondent's conduct in connection with the approval of bail bonds while acting as judge of the municipal court of Chicago. The respondent moved to quash the complaint based on the claim that all of the matters contained therein referred to activities in his judicial office, and that the only tribunal having jurisdiction to act upon the same was the legislature.

The *McGarry* court stated that "[a]n attorney at law while holding the office of judge may be disciplined for acts of immorality, dishonesty, fraud or crime *** and the fact of his holding a judicial office at the time does not render him immune from punishment ***." (*McGarry*, 380 Ill. at 369-70.) The court further stated that judicial acts of the judge, as a matter of public policy, are not the proper object of a disciplinary proceeding; however, the private, unofficial and independent actions of a judge as an individual may be subject to such jurisdiction. *McGarry*, 380 Ill. at 370.

Official action, as defined by the court in *McGarry*, is judicial where it is the result of judgment or discretion. (*McGarry*, 380 Ill. at 365.) "An officer will be regarded as being clothed with judicial or quasi-judicial functions, when the powers confided to him are so far discretionary that he can exercise or withhold them according to his own judgment as to what is necessary and proper." *McGarry*, 380 Ill. at 65, citing *People v. Bartels* (1891), 138 Ill. 322.

Members of the bar sitting as judges are, in the first instance, attorneys. *McGarry* teaches that judicial robes have no power to shield a judge against discipline for conduct which falls outside of the scope of his or her duties in administering the law. (See also *In re Holland* (1941), 377 Ill. 346; *In re Harriss* (1936), 364 Ill. 290.) The mere fact that an attorney puts on the judicial robes does not immunize him from discipline for violations of the Rules of Professional Conduct. Here, though respondent was required as a judge to file the "Declaration of Economic Interest" statement, the filing thereof was not in the exercise of his "official duties" as a judge. Contrarily, it was purely an administrative requirement of the court system, over which respondent exercised no judicial discretion.

Returning to the Administrator's contention, respondent asserts that the "act of the signer should be judged by the intent of the signer, and not on an objective standard that would impose a strict liability standard for any error in the answer to the affidavit's questions." He maintains, citing *In re Mitgang* (1944), 385 Ill. 311, 324, that the motive and intent of the lawyer should always be considered in the imposition of discipline and in determining whether or not an "event of discipline has occurred."

It appears that respondent is relying upon language in *Mitgang* which states that "[i]n order to warrant disbarment or suspension the record must be free from doubt not only as to the act charged but also as to the motive with which it is done." (*Mitgang*, 385 Ill. at 324.) *Mitgang* is a solicitation case. For this proposition, it relied upon a line of other solicitation cases. (See *In re Brumund* (1942), 381 Ill. 139; *In re Greenberg* (1942), 380 Ill. 417; *In re Hallmann* (1943), 384 Ill. 325.) The proposition, at first glance, would appear to be in conflict with the more recently stated standard. However, we believe it to be no more than a refinement of the standard as it has evolved in case law.

In *In re Bloom* (1968), 39 Ill. 2d 250, 254-55, quoting *In re Abbamonto* (1960), 19 Ill. 2d 93, 98, this court stated that " '[i]t is vital to the well-being of society that an attorney, who is an officer of the court and a part of our judicial system, should maintain the most scrupulous care in conducting his professional and business affairs.' " (See also *In re Clark* (1956), 8 Ill. 2d 314, 320.) Therefore, evidence of dishonest intent and motive is not necessary to justify the imposition of discipline. (*In re Heller* (1988), 126 Ill. 2d 94, 108; *In re Clayter* (1980), 78 Ill. 2d 276, 283.) Evidence which demonstrates the absence of dishonest intent is usually only appropri-

ate to determine the nature and severity of the sanction imposed. *Clayter*, 78 Ill. 2d at 283.

This more recent standard has its origin in *In re Veach* (1953), 1 Ill. 2d 264, which, like *Mitgang*, is a solicitation case. In *Veach*, the respondent asserted that the charged misconduct must be shown to have been fraudulent and the result of improper motives, and that the proof must show intent. In response, the court stated that every type of misconduct in which attorneys may engage does not involve fraud or deceit, but is nevertheless reprehensible. (*Veach*, 1 Ill. 2d at 272.) Further, the court stated that the "[l]ack of such element does not render the act any the less reprehensive, nor does it serve to promote the good reputation of the bar." (*Veach*, 1 Ill. 2d at 272.) The court in *In re Clark* (1956), 8 Ill. 2d 314, cited above, relied upon *Veach* in holding that the imposition of discipline does not require a finding of improper motive.

The "Declaration of Economic Interest" statement serves a valuable function: it provides a necessary safeguard for the integrity of the judiciary as well as assurance to the public of the impartiality of the system. The very nature of the filing requirement compels complete and accurate disclosure. We recognize that not every failure to accurately complete the "Declaration of Economic Interest" statement involves fraud or deceit. However, since we deem accurate disclosure so important, we do not believe that discipline for inaccurate reporting should depend upon the subjective state of the judge's mind. If it did, the purpose for the rule which requires the statement to be filed would be defeated. Thus, we decline to fashion a rule which would impose discipline only where fraud or deceit may be found. An attorney can be subject to discipline though his misconduct is based merely upon an honest mistake. See *In re Young* (1986), 111 Ill. 2d 98, 103.

That notwithstanding, the evidence here does not support a finding of fraud. Though it might be reasonable, as the Administrator argues, to assume respondent's motives for failing to disclose the debt on the statement, a finding of fraud requires more. There must be a showing that his failure to disclose was, in fact, done with the intent to deceive. *Exline v. Weldon* (1974), 57 Ill. 2d 105, 110.

Here, respondent testified that his reason for answering the inquiry in the negative was because he believed it presented no conflict. The Board found, based on his testimony, that at the time respondent completed his statement of economic interests he owed Lunardi $800 on the indebtedness and that, given the size of the loan, respondent did not consider it to present a conflict of interest. However, the Board determined that respondent was nonetheless required to disclose this information. Thus, the Board concluded that respondent had violated Rule 1—102(a)(5) and Canon 9, but not Rule 1—102(a)(4).

The Board apparently found respondent's testimony on the issue credible. We find no basis upon which to disturb its findings.

## SANCTION

The Administrator urges that the Board's recommendation of a 30-day suspension is "woefully inadequate." He argues that respondent's failure to disclose the debtor-creditor relationship on his "Declaration of Economic Interest" statement alone warrants more than a 30-day suspension. He maintains that the solicitation of the loans, coupled with respondent's failure to disclose the debtor-creditor relationship, fully justifies a two-year suspension.

This court is charged with the responsibility of determining the appropriate sanction for misconduct. We have often stated that the purpose of attorney discipline is to

safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach. (*In re Uhler* (1989), 126 Ill. 2d 532, 538.) In determining the appropriate sanction, we are mindful that although fairness requires a reasonable degree of consistency and predictability, each disciplinary matter is unique and must be decided on its own facts (*In re Yamaguchi* (1987), 118 Ill. 2d 417, 427-28), with due consideration given to relevant factors in aggravation and mitigation (*In re Lidov* (1989), 129 Ill. 2d 424, 430).

Respondent points out that the Board found that respondent violated Rule 1—102(a)(5), and then asserts that the "cases do not command any particular level of discipline" for violations thereof.

We disagree. It is the nature of Rule 1—102(a)(5) which gives the appearance that no particular sanction is warranted. Generally, a charge of a Rule 1—102(a)(5) violation, like a Canon 9 violation, is a subsidiary one which is dependent upon other substantive charges. (See *In re Jones* (1988), 125 Ill. 2d 371, 377; *In re Corboy* (1988), 124 Ill. 2d 29, 37.) Where, as a result of an attorney's misconduct, a violation of Rule 1—102(a)(5) occurs, even though contingent in nature, it is no less regarded in the determination of an appropriate sanction. See, *e.g., In re Lane* (1989), 127 Ill. 2d 90 (respondent found to have violated Rules 1—102(a)(5) and 7—110(a) resulting in sanction of one-year suspension); see also *In re Powell* (1988), 126 Ill. 2d 15; *In re Heller* (1988), 126 Ill. 2d 94.

We reject respondent's contention that a violation of Rule 1—102(a)(5) warrants no particular sanction. For purposes of determining the appropriate sanction for a violation of Rule 1—102(a)(5), in the interest of fairness and consistency, our primary focus is necessarily on the underlying misconduct. Since Rule 1—102(a)(5) is dependent in nature, sanctions for its violation cannot be viewed in isolation of the underlying misconduct.

Here, respondent's conduct, in soliciting and failing to disclose a loan from an attorney practicing before him, created the potential for partiality, jeopardized the integrity of the judicial system, and created the appearance of impropriety. We will consider, as a whole, the underlying misconduct, and the resulting violations of the Code, in determining the appropriate sanction. (Incidentally, we note that Canon 9 (134 Ill. 2d Canon 9), standing alone, provides no basis, absent an allegation and proof of a violation of the Code, upon which to impose a sanction. (See *In re Powell* (1988), 126 Ill. 2d 15, 29-30; *In re Lunardi* (1989), 127 Ill. 2d 413, 426.) This is so because Canon 9 is not a standard of discipline in itself, but merely expresses the policy considerations underlying the disciplinary rules contained within Canon 9. *Powell*, 126 Ill. 2d at 29.)

Respondent argues that at the time of the loan transaction, "things were not as clear" as they are now. He notes that the only proscription in the Code of Judicial Conduct was that a judge was not to accept gifts or favors from litigants or lawyers practicing before him. (87 Ill. 2d R. 61(c)(22).) He points out that the rule did not mention loans or interest.

No such lack of "clarity" existed in the Code of Professional Responsibility at the time of the loan. Rule 7—110(a) (107 Ill. 2d R. 7—110(a)) expressly stated that, with the exception of contributions to the campaign fund of a candidate for judge, a lawyer shall not give or lend any thing of value to a judge. If a lawyer may not lend any thing of value to a judge, then *a fortiori*, a judge may not accept any thing of value from a lawyer. As we have stated, a judge is, in the first instance, an attorney, who, based on the teachings of *McGarry*, is subject to attorney disciplinary proceedings for his unofficial conduct. (See *People ex rel. Harrod v. Illinois Courts Comm'n* (1977), 69 Ill. 2d 445, 471.) As such he is

charged with knowledge of the proscriptions under the Code of Professional Responsibility as well as under the Code of Judicial Conduct.

As an aside, we note that in *In re Corboy* (1988), 124 Ill. 2d 29, we held, for the first time, that Rule 7—110(a) must be read in conjunction with the Code of Judicial Conduct. We there declined to impose discipline upon the respondents because we determined that they had acted "without the guidance of precedent or settled opinion, and there was, apparently, considerable belief among members of the bar that [the respondents] had acted properly." *Corboy*, 124 Ill. 2d at 45. See also *In re Jones* (1988), 125 Ill. 2d 371.

*Corboy* is distinguishable from the present case. First, the loan transaction in *Corboy*, as to four of the respondents, was more attenuated than in the present case. In *Corboy*, the loans were solicited from the attorneys on behalf of Judge LeFevour by another attorney. Here, the parties dealt directly with one another. Secondly, the loans from four of the respondents in *Corboy* were made under the pretense that they were either a loan or a gift to Judge LeFevour's mother, not a loan to Judge LeFevour himself. It was in this context that four of the respondents in *Corboy* asserted a lack of clarity regarding the scope of the Rule 7—110(a) proscriptions. No similar lack of clarity exists, or is asserted in the context of the present facts regarding the rule. The loan transaction in this case was a direct loan from an attorney to a judge for the judge's own personal use. Third, unlike in this case, none of the respondents in *Corboy* practiced before Judge LeFevour. Finally, and most significantly, the respondents in *Corboy* were attorneys, who functioned in a singular role, and whose conduct was not directly governed by the Code of Judicial Conduct. Here, respondent's conduct was governed by both

the Code of Judicial Conduct and the Code of Professional Responsibility.

The Administrator argues that falsifying information on sworn affidavits or statements has long been held to warrant substantial sanction. He invites our attention to the following cases: *In re Mehta* (1980), 83 Ill. 2d 18 (respondent suspended for three years for filing false statements in connection with immigration cases); *In re Mitan* (1979), 75 Ill. 2d 118 (respondent disbarred for making false statements on application for admission to the bar); *In re* Meierkord (July 31, 1984), M.R. 3332 (respondent suspended for three years for filing false information in loan applications to national banks); *In re* Migely (March 22, 1979), M.R. 2248 (respondent suspended for three years and until further order for making false statements in application for a United States passport).

We find these cases to be factually distinguishable from the case here. The Administrator has neglected to include in his analysis the fact that the conduct engaged in by respondents Mehta, Migely and Meierkord resulted in either indictments or convictions for criminal offenses. The respondent Mitan failed to reveal the fact of a conviction for a felony and was found to have demonstrated a pattern of falsehood and deception. While we believe respondent's less-than-candid response on the economic interest statement to have been serious, we do not find it to be as egregious as the conduct in the cases cited by the Administrator.

Regrettably, in the past this court has been called upon to determine the appropriate sanction in cases where the attorney has violated a disciplinary rule by making loans to a judge. In this instance, we are faced with the awesome task of determining the appropriate sanction for the judge who is on the other side of the loan transaction. The judge who solicits and accepts loans from attorneys is no less guilty of misconduct than

is the attorney who makes the loan. Their conduct is comparable. Such equivalent conduct, we believe, requires a comparable sanction, and therefore we find that the 30-day suspension is inappropriate. Though we have found no cases squarely on point, we have examined a few which provide us some measure of guidance in our task.

In *In re Chatz* (1989), 131 Ill. 2d 499, the respondent arranged for a short-term loan of $5,000 to Judge Reginald Holzer at an interest rate of 8%. The respondent was not a personal friend of the judge, but he saw him at various political and religious functions. Between 1978 and 1982, the respondent appeared before Judge Holzer in 12 cases. Their debtor-creditor relationship was never revealed to opposing parties in those cases. The respondent was found to have violated Rule 7—110(a). Though there was no finding that the loan had been made with the intent to curry the judge's favor, the respondent was suspended from the practice of law for one year.

Similarly, in *In re Rothenberg* (1989), 127 Ill. 2d 139, the respondent was determined to have violated Rule 7—110(a). The respondent, who had practiced as a partner in the same law firm as did Judge Holzer, made seven loans to the judge. All the loans, with the exception of one, were repaid. The respondent appeared in one case before Judge Holzer, but had been appointed by the judge to serve as guardian *ad litem* in eight cases, and was awarded fees by Holzer in seven cases. As a result of the violation of Rule 7—110(a), respondent was suspended from the practice of law for a period of one year.

Finally, in *In re Neistein* (1989), 132 Ill. 2d 104, the respondents were found to have violated Rule 7—110(a). The respondents repaid a loan on behalf of Judge Holzer. Neither of the respondents were social friends with Holzer and neither ever appeared before him in court.

However, respondents' firm frequently had cases in the division in which Judge Holzer sat in the circuit court, and there was never any disclosure of the debtor-creditor relationship. The respondents were suspended from the practice of law for a period of 30 months. Compare *In re Ketchum* (1988), 124 Ill. 2d 50 (respondent, who made loans to Judge LeFevour, solicited other attorneys to make loans, and personally benefitted from the debtor-creditor relationship, suspended from practice for two years).

We reject *In re Lunardi* (1989), 127 Ill. 2d 413, as being analogous to the case at bar. We note that while the *Lunardi* opinion discusses each violation for which a sanction is imposed separately, it does not reveal whether the respondent would have received an 18-month suspension in the absence of his felony conviction. Respondent's conduct, while sharing some commonality with Lunardi's conduct, is not comparable.

Although we consider respondent's actions to be serious breaches of his professional and legal responsibilities, we deem it significant that, except for the misconduct charged here, respondent's record is unblemished; there was no evidence of dishonest motive; and several witnesses, representing members of both the bench and bar, testified to respondent's honesty and integrity.

Therefore, after careful consideration of the facts in this case, the facts in mitigation, and in light of the sanctions imposed in comparable cases, we determine that a six-month suspension from the practice of law is warranted and appropriate.

*Respondent suspended.*

JUSTICE MORAN took no part in the consideration or decision of this case.