**MARC DEVELOPMENT, INC., an Illinois corporation, Keith–Marc Properties, Ltd., an Illinois limited partnership, and Brown Leasing, Inc., f/k/a Capitol Leasing Company, Plaintiffs,**

v.

**Philip A. WOLIN, Brian McLaughlin, Gerald J. DeNicholas and Alex M. Vercillo, Defendants.**

**No. 93 C 2037.**

United States District Court, N.D. Illinois, E.D.

Dec. 1, 1993.

Shelly Byron Kulwin, Kulwin & Associates, Chicago, IL, for Marc Development, Inc., Keith–Marc Properties, Ltd.

Michael J. O'Rourke, Thomas G. Griffin, Kelly A. McCloskey, O'Rourke & Griffin, Chicago, IL, for Brown Leasing Inc.

Richard Harney Donohue, William Michael Sneed, Michael J. Pfau, Baker & McKenzie, Chicago, IL, for Philip A. Wolin.

David Apter, Jennifer Ann Esposito, Kantor & Apter, Ltd., Northbrook, IL, for Brian McLaughlin.

Phillip Jay Zisook, Stuart Berks, Deutsch, Levy & Engel, Chicago, IL, for Gerald J. DeNicholas.

George B. Collins, Collins & Bargione, Chicago, IL, for Alex M. Vercillo.

## AMENDED MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Marc Development, Inc. (MDI), Keith–Marc Properties Ltd. (KMPL), and Brown Leasing, Inc. (Brown), bring this action against defendants Brian McLaughlin (McLaughlin), Philip Wolin (Wolin), Gerald DeNicholas (DeNicholas), and Alex Vercillo (Vercillo) under section 503 of the Federal Reserve Act, 12 U.S.C. § 221 *et seq.*, based on an alleged violation of 18 U.S.C. § 1005. Before this court are defendants Wolin and DeNicholas' motions to dismiss plaintiffs' complaint. Federal subject matter jurisdiction is based on 28 U.S.C. § 1331. Supplemental jurisdiction is based on 28 U.S.C. § 1367. For the reasons stated below defendants' motions are granted in part, denied in part, and deferred in part.

### FACTS

The Federal Deposit Insurance Corporation (FDIC) was appointed receiver for The Cosmopolitan National Bank (Cosmopolitan) on May 17, 1991. At issue in this case is a loan participation agreement entered into by MDI, KMPL, Brown and Cosmopolitan in June 1989—before Cosmopolitan went into receivership. Defendant Vercillo was president, chief operating officer and director of Cosmopolitan. Defendant DeNicholas was executive vice-president, chief financial officer and director of Cosmopolitan. Defendant McLaughlin was a senior officer of Cosmopolitan and was responsible for the administration of its commercial and real estate loan portfolio. Defendant Wolin was retained by Cosmopolitan to represent the bank in a lawsuit involving four disputed loan participations between Brown and Cosmopolitan. These loan participation agreements are unrelated to the MDI, KMPL, Brown and Cosmopolitan loan participation at issue in this case.

In June 1989, Cosmopolitan agreed with Brown to participate up to the amount of $2,000,000 of a total $5,000,000 loan to MDI and KMPL for the development of property near the Deer Valley ski resort in Utah. As a condition of its participation in the loan, Cosmopolitan required that it be repaid first on its outstanding share of the loan. As of September 1990, MDI and KMPL had been advanced $1,781,542.68 from Cosmopolitan under the loan. No further funds were dispersed from Cosmopolitan to MDI and KMPL; however, Brown Leasing advanced $1,504,590.88 in October 1990, and Terry Brown personally advanced an additional $735,655.56 in November 1990.

In March 1991, MDI began making loan payments to Cosmopolitan. Payments were made by MDI on March 4, March 13 and March 28, 1991, with the March 28 payment of $858,159.22 reimbursing Cosmopolitan in full for monies advanced to MDI under the loan participation agreement. Cosmopolitan accepted all of MDI's payments, including the March 28 payment, and did not advise MDI/KMPL prior to or at the time of acceptance of that payment that Cosmopolitan intended to apply the payment in a manner other than that designated by MDI and KMPL.

However, plaintiffs allege that on April 5, 1991, defendants reversed Cosmopolitan's bookkeeping entry for MDI's March 28, 1991 principal payment and applied $718,518.58 of the payment as a "setoff" to the four unrelat-

ed and disputed loan participations between Brown and Cosmopolitan. MDI and KMPL were not parties to these other loan participations.

Plaintiffs contend that defendants effected this bookkeeping reversal and purported setoff to misstate to federal regulators the financial condition of Cosmopolitan and to misstate the status and outstanding balances of the MDI/KMPL loan and the disputed Brown Leasing participations. By applying the MDI/KMPL payment to the Brown–Cosmopolitan loan participations, plaintiffs allege, defendants were able to report to federal regulators that there was an outstanding amount due on the MDI/KMPL loan and that the Brown–Cosmopolitan loan participations which had formerly been labeled troubled assets, in litigation and on non-accrual status, were now performing assets. Plaintiffs allege that these misrepresentations were made in an attempt to injure Brown and MDI and KMPL, and to inflate the assets of Cosmopolitan to stave off closure by federal regulators long enough for Phoenix Financial, a group organized by defendants, to acquire control of the bank.

Phoenix Financial was organized in 1991 by DeNicholas and Wolin. Plaintiffs claim that defendants organized Phoenix Financial with the express purpose of acquiring Cosmopolitan before the failing financial institution could be taken into receivership by the FDIC. Plaintiffs allege that DeNicholas and Wolin were to be principal investors in Phoenix Financial, DeNicholas and Vercillo were to run Phoenix, and McLaughlin was to be an integral part of the new bank management after Phoenix Financial acquired Cosmopolitan. However, defendants' attempt to avoid seizure of Cosmopolitan by federal regulators was ultimately unsuccessful and the FDIC seized control of the bank in May 1991.

### DISCUSSION

Defendants Wolin and DeNicholas move this court for dismissal of plaintiffs' complaint in its entirety. Defendant Wolin maintains that because he was neither officer nor director of Cosmopolitan he cannot be sued under 12 U.S.C. § 503, which imposes individual liability on "directors or officers of any member bank." Therefore, Wolin contends that there is no basis for federal jurisdiction over him and, that being the case, the state law claims should be dismissed as well.

Defendant DeNicholas contends that plaintiffs' entire complaint should be dismissed because it fails to state a claim for a violation of § 503. DeNicholas maintains that federal jurisdiction cannot be invoked under § 503 for a violation of 18 U.S.C. § 1005 unless a truly false entry has been made. DeNicholas contends that because Cosmopolitan recorded the payment as a setoff on the unrelated Brown–Cosmopolitan participation agreements, and actually did use the payment as a setoff on those agreements, there was no false entry because the bank's records accurately reflect the disposition of MDI's payment. Therefore, DeNicholas maintains that plaintiffs cannot state a claim under § 503. Additionally, DeNicholas maintains that plaintiffs have failed to adequately allege causation under § 503. Thus, DeNicholas argues that count VI should be dismissed.

Defendants further contend that plaintiffs cannot state a claim for intentional interference with contract relations or intentional interference with prospective business advantage (counts I and V) because plaintiffs did not plead the necessary elements of either cause of action. Both torts require a knowing, intentional and affirmative interference by defendant with a third party, and defendants maintain there is no third party interference charged by plaintiffs. Moreover, defendants contend that plaintiffs have failed to plead that defendants acted with actual malice, another element of the tort of intentional interference with prospective business advantage. Therefore, DeNicholas and Wolin argue, counts I and V should be dismissed. Next, defendants contend that counts III and VII should be dismissed because plaintiffs have failed to plead their fraud claim with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants maintain that plaintiffs have similarly failed to allege which of their statements induced MDI/KMPL to act to its detriment. Finally, defendants contend that plaintiffs' claim for conversion (counts IV and VIII) should be dismissed because a bank account

is not an appropriate subject for an action for conversion.

## I. *Plaintiffs MDI, KMPL and Brown's Federal Claims Against Wolin, Count II: Violation of 12 U.S.C. § 503 and 18 U.S.C. § 1005*

Federal Reserve Bank officers, directors, agents and employees are prohibited from making

> any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company ... or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation....

18 U.S.C. § 1005.

■ If the directors or officers of any member bank knowingly violate § 1005, 12 U.S.C. § 503 provides that

> every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which the member bank, its shareholders, or any other persons shall have sustained in consequence of such violation.

Because defendant Wolin served only as legal counsel for Cosmopolitan, and not as officer or director, he contends that he is not in the class of persons who may be made personally liable under § 503. This court agrees.

Section 503 specifically limits personal liability for violations of § 1005 to officers and directors only. While § 503 makes officers and directors liable for their acquiescence in the violations of their agents, as well as their own violations, it contains no language which suggests the agents themselves may be held personally liable.

Section 503 is one of the sections in a subchapter of the Federal Reserve Act entitled, "Civil Liability of Federal Reserve Member Banks, Shareholders, and Officers." Within this subchapter Congress has made different classes of individuals personally liable for the commission of various violations. When read together, it is apparent that each section was carefully drafted, with Congress deliberately imposing civil liability on different classes of individuals under different sections. Section 505 holds "any officer, director, employee, agent or other person" liable. Section 502 holds "shareholders" liable. Section 503 makes only directors and officers liable for damages sustained by others as a result of their ·violation. This court is not prepared to extend civil liability to Wolin because he was neither an officer nor a director of Cosmopolitan Bank.

Plaintiffs argue that Wolin can be held liable under § 503 because he was a *de facto* officer of Cosmopolitan Bank. Plaintiffs contend that Wolin exerted so much influence and control over the banking operations and transactions at issue in this case that he should be held accountable under § 503. However, plaintiffs cite no case and research has failed to disclose any case where liability was extended under § 503 to anyone but directors or officers. Plaintiffs rely on *United States v. Cantrell*, 862 F.2d 316, 1988 WL 121246, 1988 U.S.App. LEXIS 18109 (6th Cir.1988), to support their argument. However, *Cantrell* is not determinative of this issue. *Cantrell* involved 18 U.S.C. § 656, a federal banking statute which is much broader in scope than 12 U.S.C. § 503. Under § 656, "whoever, being an officer, director, agent or employee," or a person connected "in any capacity," can be held liable.

■ While the Sixth Circuit may have been willing to impose criminal penalties upon Cantrell as a *de facto* officer under § 656, he would have been liable anyway, regardless of his status, due to the sweeping scope of § 656. In addition, § 656 imposes criminal penalties and fines, not civil liability. In the absence of clear authority to do so, this court will not impose civil liability under § 503 on someone other than an officer or director. Plaintiffs have provided no such authority. Because Wolin is neither officer nor director, he cannot be sued under § 503. Additionally, plaintiffs cannot sue Wolin under 18 U.S.C. § 1005 because it is a criminal statute and does not create a private right of action. *See Homes By Michelle, Inc. v. Federal Sav. Bank*, 733 F.Supp. 1495, 1499 (N.D.Ga.1990). Therefore, federal jurisdic-

tion is lacking and count II is dismissed as against Wolin.

## II. *Plaintiffs MDI and KMPL's Federal Claim Against DeNicholas, Count VI: Violation of 12 U.S.C. § 503 and 18 U.S.C. § 1005*

■ Defendant DeNicholas may be sued under 12 U.S.C. § 503 because he was executive vice-president, chief financial officer and director of Cosmopolitan. However, DeNicholas contends that plaintiffs fail to state a claim under 18 U.S.C. § 1005 and, therefore, 12 U.S.C. § 503, because plaintiffs admit their account was credited in the manner reflected in Cosmopolitan's books and records. DeNicholas argues that because Cosmopolitan in fact used MDI/KMPL's March 28 payment to set off the disputed loan participations between Brown and Cosmopolitan and changed the bank's books to reflect this setoff, plaintiffs cannot claim that these entries were "false" within the meaning of § 1005. This court disagrees.

DeNicholas relies on *United States v. Erickson*, 601 F.2d 296 (7th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 406 (1979), for the proposition that an entry recording a transaction on the bank's books exactly as it occurred is not a false entry under § 1005, despite the fact that it is part of a fraudulent or otherwise illegal scheme. However, *Erickson* is not dispositive. In *United States v. Marquardt*, 786 F.2d 771 (7th Cir.1986), *Erickson* was distinguished in cases where the transaction was recorded properly, but nonetheless was a transaction that was not authorized by a customer. The Seventh Circuit held in *Marquardt* that where transactions are undertaken without the knowledge or consent of a customer, they are fictitious and the recorded transaction is false within the meaning of 18 U.S.C. § 1006 (a parallel provision of § 1005). *Marquardt*, 786 F.2d at 779.

Here Cosmopolitan, through its officers, accurately recorded the transactions at issue in this case. MDI's payment was used as a setoff and recorded as such. However, the use of the payment as a setoff was allegedly not authorized by MDI or KMPL. MDI and KMPL intended that the March 28 payment

be the final payment to Cosmopolitan on their loan. Therefore, the unauthorized use of funds constitutes a false entry under § 1005 and the reasoning of *Marquardt*.

■ DeNicholas' claims that plaintiffs have failed to allege causation adequately are also rejected. Section 503 imposes individual liability on officers and directors "for all damages which the member bank, its shareholders, or any other persons shall have sustained *in consequence of* [a § 1005] violation" (emphasis added). Therefore, § 503 requires some causal connection between the complained-of acts (here the violation of § 1005) and the losses claimed by the plaintiffs. *See Ryan v. State of Illinois*, No. 91 C 3725, 1993 WL 147416, 1993 U.S. Dist. LEXIS 5877, at *22–23 (N.D.Ill. Apr. 30, 1993) (stating that a direct causal relation between the conduct and injury sued upon is required to confer standing under § 503); *Accord Hometowne Builders, Inc. v. Atlantic Nat'l Bank*, 477 F.Supp. 717, 722 (E.D.Va.1979).

DeNicholas maintains that plaintiffs have failed to plead damages adequately because they failed to plead express reliance on the allegedly false records. In support of this contention DeNicholas cites *Durante Bros. and Sons, Inc. v. Flushing Nat'l Bank*, 571 F.Supp. 489 (E.D.N.Y.1983). However, DeNicholas' reliance on *Durante Bros.* is misplaced. In *Durante Bros.*, the court did not rule that reliance on the false records was required to state a claim under § 503. Rather, the court stated that the record was inadequate on the issue of causation and that, before trial, plaintiff would be required to make an offer of proof to show that their alleged damages were in consequence of the § 1005 violations. *Id.* at 494. The only mention of reliance was in regard to the plaintiffs' 12 U.S.C. § 161 claim. *Id.*

■ Thus, plaintiffs need only allege that their damages were a direct consequence of the § 1005 violations. This they have done. In their complaint plaintiffs contend that the reversal of the bookkeeping entry and the setoff resulted in the bank's records showing an amount due on Cosmopolitan's loan to MDI and KMPL. Due to this false balance the FDIC, upon becoming receiver for Cos-

mopolitan, refused to release liens on the property. Plaintiffs maintain that the continued presence of these liens resulted in millions of dollars of lost sales and expenses. Plaintiffs have sufficiently alleged causation and have therefore stated a claim under § 503. Accordingly, DeNicholas' motion to dismiss count VI is denied.

### III. *Plaintiffs' State Law Claims Against Wolin and DeNicholas*

■ This court can exercise supplemental jurisdiction over the state law claims against Wolin, provided these claims are adequately pled, despite the fact that the sole federal claim against him has been dismissed. With limited exceptions, 28 U.S.C. § 1367 provides that when a federal district court has original jurisdiction in any civil action the court possesses supplemental jurisdiction over all state claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367 has been read by courts to allow jurisdiction in cases similar to this. *See United States v. Tazzioli Constr. Co.*, 796 F.Supp. 1130 (N.D.Ill.1992). This court has original jurisdiction over the federal claim asserted against defendants DeNicholas, Vercillo and McLaughlin. The state law claims at issue here arise out of the same case or controversy as the federal claim and they do not fall under any of the exceptions listed in § 1367(c). Accordingly, supplemental jurisdiction is proper.

### A. *Counts I and V: Intentional Interference with Contractual Relations and Interference with Prospective Business Advantage*

■ Wolin and DeNicholas maintain that plaintiffs have failed to state a claim for intentional interference with contractual relations. Under Illinois law the elements of the tort of intentional interference with contractual relations are: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of that contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of contract by a third

party; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330–31 (7th Cir.1983); *Certified Mechanical Contractors, Inc. v. Wight & Co.*, 162 Ill.App.3d 391, 113 Ill.Dec. 888, 892–93, 515 N.E.2d 1047, 1051–52 (1987). Defendants contend that plaintiffs cannot state a claim under this tort because there is no third party interference at issue here.

■ As officer and attorney for Cosmopolitan, DeNicholas and Wolin were conditionally privileged to act to protect the best interests of Cosmopolitan. *See Waldinger Corp. v. CRS Group Engineers*, 775 F.2d 781, 789–90 (7th Cir.1985) (stating that attorneys and corporate officers are privileged to act to protect the best interests of their clients and corporations, respectively). Where such a privilege exists, a plaintiff seeking to state a claim for intentional interference with contract relations must allege that the agent's intentional acts were not taken to further its principal's best interests, but to further the agent's personal goals or to injure the other party to the contract. *Id.* at 790; *Fuller*, 719 F.2d at 1333; *Swager v. Couri*, 77 Ill.2d 173, 32 Ill.Dec. 540, 546–47, 395 N.E.2d 921, 927–28 (1979). Plaintiffs maintain that the third party interference issue is the defendants' unjustified interference with the contract between plaintiffs and Cosmopolitan.

■ Plaintiffs have sufficiently stated a claim for intentional interference with contractual relations. They have alleged the elements of intentional interference with contract relations: (1) that a contract existed between MDI, KMPL, Brown, and Cosmopolitan; (2) DeNicholas and Wolin knew of that contract; (3) DeNicholas and Wolin induced the bank to use the MDI payment as a setoff on the unrelated Brown/Cosmopolitan participations to further their own personal financial interests and to benefit Phoenix Financial, a bank holding company in which they were to be controlling officers; (4) this setoff constituted a breach of Cosmopolitan's agreements with plaintiffs; and (5) the plaintiffs were damaged as a result of this breach. Plaintiffs contend that DeNicholas and Wolin

were acting in their own personal interests when they induced the setoff and that the setoff was not in the best interests of the bank because it constituted criminal conduct under 18 U.S.C. § 1005. Thus plaintiffs have stated a claim for intentional interference with contract relations and defendants' motions to dismiss this claim are denied.

■■■■ However, defendants' motion to dismiss plaintiffs' claim for intentional interference with prospective business advantage are granted because plaintiffs have failed to allege the elements of that tort. To state a claim for intentional interference with prospective business advantage, plaintiffs must allege (1) a reasonable expectation of entering a valid business relationship with a third party; (2) knowledge of that relationship on the part of the defendant; (3) defendant's purposeful interference with and defeat of that expectancy; and (4) injury to plaintiff as a result. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.,* 956 F.2d 1399, 1404 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992); *Kurtz v. Illinois Nat'l Bank,* 179 Ill.App.3d 719, 128 Ill. Dec. 562, 567, 534 N.E.2d 1007, 1012 (1989). In addition, plaintiff must prove the tortfeasor acted with actual malice, *i.e.,* the individual acted with a desire to harm that was unrelated to the interest he was presumably trying to protect by bringing about the contract breach. *Capital Options Inv., Inc. v. Goldberg Bros. Commodities, Inc.,* 958 F.2d 186, 189 (7th Cir.1992). Plaintiffs MDI and KMPL have failed to state a claim for this tort—there is not even mention of a prospective relationship with a third party. Accordingly, defendants' motions to dismiss this claim are granted.

## B. *Counts III and VII: Scheme to Defraud*

■■■■ Wolin and DeNicholas further move this court to dismiss plaintiffs' claims for fraud on the ground that plaintiffs have failed to plead the "who, what, when and where" of the allegedly fraudulent scheme, as required by Fed.R.Civ.P. 9(b). Defendants also contend that plaintiffs have failed to allege which of their statements induced plaintiffs to act to their detriment.

Rule 9(b) requires that

[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.

The complaint must set forth the circumstances of fraud, including the time and place of the fraud, the contents of the omissions or misrepresentations, and the identity of the party perpetrating the fraud. *In re Olympia Brewing Co. Sec. Litig.,* 674 F.Supp. 597, 619 (N.D.Ill.1987). We believe that plaintiffs have alleged sufficient facts to state a cause of action for fraud.

■■■■ Under Illinois law fraud occurs where a defendant makes a false representation of material fact which defendant knows is false, defendant intends that plaintiff rely on this false representation and plaintiff reasonably relies thereon and sustains damage because of it. *Dresser Indus., Inc. v. Pyrrhus AG,* 936 F.2d 921, 934 (7th Cir.1991); *In re Witt,* 145 Ill.2d 380, 164 Ill.Dec. 610, 615, 583 N.E.2d 526, 531 (1991). A fraudulent representation may be made by words or by actions, or other conduct amounting to a statement of fact. *Glazewski v. Coronet Ins. Co.,* 108 Ill.2d 243, 91 Ill.Dec. 628, 631, 483 N.E.2d 1263, 1266 (1985). The intentional concealment of a material fact is the equivalent of a false statement of material fact. *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill.App.3d 154, 109 Ill.Dec. 541, 545, 510 N.E.2d 409, 413 (Ill.App.1986).

■■■■ Plaintiffs in this case allege that defendants failed to inform them that their payment would be applied in any other manner than plaintiffs specified; that defendants knew the reversal of the bookkeeping entry and the application of these funds as a setoff was improper; that plaintiffs relied on Cosmopolitan to correctly record their banking activity; that due to the omission by defendants as to how the funds were to be applied, plaintiffs were induced to allow their payment to be applied as a setoff; and that plaintiffs suffered damages as a result. Therefore, plaintiffs have stated a claim for fraud.

556

■ Rule 9(b) has also been satisfied as plaintiffs have pled with enough specificity to give defendants notice of the complained-of acts and to enable defendants to prepare a defense. Where multiple defendants are involved it is generally the case that the complaint must set forth the role of each defendant in the fraudulent scheme. However, group allegations such as those in this case are permissible where corporate insiders are involved and the role of each insider defendant is solely within their knowledge. *See Banowitz v. State Exch. Bank*, 600 F.Supp. 1466, 1469 (N.D.Ill.1985). This exception is particularly applicable here, where there is just one transaction at issue and only four named defendants. We conclude that the requirements of Rule 9(b) have been met. Defendants' motions to dismiss plaintiffs' fraud claim (counts III and VII) are therefore denied.

### C. *Counts IV and VIII: Conversion*

Finally, Wolin and DeNicholas ask this court to dismiss plaintiffs' claim for conversion. However, both sides have failed to adequately develop their arguments in regard to the conversion claim. It seems that the conversion claim was merely tacked on at the end of each side's motion as an alternate ground for relief or dismissal. Given this, and the fact that later developments in this case may obviate the need to address the conversion claim at all, we decline to rule on the conversion issue at this time. Both sides will be given the opportunity to supplement their conversion arguments, should it become necessary at a later date.

### CONCLUSION

For the reasons hereinabove stated, Wolin's motion to dismiss count II is granted and DeNicholas' motion to dismiss count VI is denied. Defendants' motions to dismiss counts III and VII are denied and the motions to dismiss counts I and V are granted in part and denied in part. A decision on defendants' motions to dismiss counts IV and VIII is deferred.